379 So.2d 69 (1979)
Geneva McKINNEY, Plaintiff-Appellee,
v.
Larry GREENE et al., Defendants-Appellants.
No. 7258.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1979.
Dissenting Opinion January 3, 1980.
Rehearings Denied February 4, 1980.
Writ Refused March 21, 1980.
*70 Brittain & Williams, Joe Payne Williams, Natchitoches, for defendant-appellant.
Lunn, Irion, Switzer, Johnson & Salley, James B. Gardner, Shreveport, Davis & Simmons, James Lynn Davis, Many, for defendants-appellees.
Tate & McManus, Vernon C. McManus, Eunice, for plaintiff-appellee.
Before SWIFT, STOKER and DOUCET, JJ.
*71 DOUCET, Judge.
Geneva McKinney brought this tort action individually and on behalf of her minor son, Robert Hicks. In her petition, plaintiff alleged that Robert had been kicked by Larry Greene, principal of the Pleasant Hill Elementary School, as a result of which both she and the child had suffered mental and physical pain, and the child had incurred a disability. Larry Greene, the Sabine Parish School Board and the Insurance Company of North America were named as defendants.
Greene and the Sabine Parish School Board filed third party demands with their answers to plaintiff's petition. Greene brought a third party demand against the school board, alleging that LSA-R.S. 17:416.1 required the school board to provide him with a defense and indemnify him against any judgment rendered against him. The school board's third party demand was brought against Greene's professional liability insurer, Horace Mann Insurance Company, and its own liability insurer, the Insurance Company of North America. The school board sought indemnity from the insurers for any judgment rendered against it, and the imposition of attorney's fees against its insurer, because of the insurer's refusal to defend it.
Following a trial on the merits, judgment was rendered in favor of plaintiff in her capacity as tutrix of her minor child and against Larry Greene in the amount of $500.00. Plaintiff's demand against the Sabine Parish School Board and the Insurance Company of North America were dismissed. The third party demands filed by Greene and the school board were also dismissed. Greene appeals the judgment rendered in favor of plaintiff and the dismissal of his third party demand. The school board has answered the appeal, asking that the dismissal of its third party demand be reversed. Plaintiff has not appealed.
The incident giving rise to this suit took place on March 1, 1977 at the Pleasant Hill Elementary School in Sabine Parish. Robert Hicks, a thirteen year old student in the school's special education program, was seen attacking a younger boy on the school playground. Mrs. Doll Carhee, the playground supervisor for that day, intervened and took the two boys to the school cafeteria, where the principal, Larry Greene, was assisting with serving lunch. As Mrs. Carhee was explaining to Mr. Greene what had taken place on the playground, Robert began to push the other boy again, apparently attempting to start a fight. Mr. Greene shouted at the boys, ordering Robert to "back off." At the time, Mr. Greene was standing on the opposite side of a serving counter from the boys and had a lunch tray in one hand and a serving spoon in the other. He repeated his command twice more then walked around the end of the serving counter and kicked Robert in the buttocks with the side of his shoe.
Mr. Greene testified that he kicked Robert because he felt that a fight was imminent, and Robert had failed to respond to his verbal commands. The force of the kick, although of sufficient intensity to get the child's attention and cause him to stop his activities, was apparently slight. The evidence, which included a report from a physician who examined Robert shortly thereafter, clearly established that he had suffered no physical harm as a result of it.
LSA-R.S. 17:416.1(A) provides that "teachers, principals, and administrators [in] the public schools may, subject to any rules as may be adopted by the parish or city school board, employ other reasonable disciplinary and corrective measures to maintain order in the schools...." Prior to the enactment of that provision, this court had held in Roy v. Continental Insurance Company, 313 So.2d 349 (La.App. 3rd Cir. 1975) that corporal punishment, reasonable in degree, is a permissible disciplinary measure, which teachers can use without becoming exposed to civil liability. It is clear that in enacting LSA-R.S. 17:416.1(A) the legislature did not intend to prohibit the use of reasonable corporal punishment by teachers and school officials. Thompson v. Iberville Parish School Board, 372 So.2d 642 (La.App. 1st Cir. 1979). However, the individual school boards were given *72 authority to adopt rules regulating and restricting its use.
Pursuant to that authority, on December 15, 1976, the Sabine Parish School Board adopted a resolution concerning the maintenance of discipline in the public schools, which provides in pertinent part:
"Section 2.
(a) Corporal punishment for purposes of this resolution, and use in this school system is defined as, and limited to, punishing or correcting a student by striking the student on the buttocks with a paddle a maximum of five (5) times. When such corporal punishment is administered to a student, it must be administered in a reasonable manner taking into consideration the age, size, emotional condition and health of the student.
(b) Nothing contained herein shall be interpreted as prohibiting an employee from using physical force, reasonable and appropriate under the circumstances, in defending himself against a physical attack by a student or from using physical force, reasonable and appropriate under the circumstances, to restrain a student from attacking another student or employee."
The principal, Larry Greene, was bound to observe these rules. The propriety of his actions in this case must be determined with reference to them.[1]
Greene was clearly prohibited from kicking students as a means of administering corporal punishment in normal disciplinary situations. He argues, however, that his actions were governed by paragraph (b) of the excerpt from the school board resolution quoted above. Assuming for the sake of argument that the child's behavior was of the type contemplated by the school board in adopting that paragraph, we cannot agree that Greene's actions were "reasonable and appropriate under the circumstances". The trial judge correctly concluded that an emergency situation did not exist. Greene had sufficient time to put down the items in his hands, which would have allowed him to use a less offensive but equally effective method of restraining the child.
We conclude that Greene's actions were in violation of the school board's rules governing the use of corporal punishment. We agree that he is liable for the child's injuries, however, we believe that the trial judge's award of $500 is excessive. It is clear that the child's injuries were limited to the embarrassment and humiliation caused by his being disciplined. It is also clear that his behavior justified the principal's use of corporal punishment. We do not believe that Greene's improper administration of that punishment greatly increased the level of embarrassment and humiliation that he would otherwise have suffered if it had been properly administered. Accordingly, we will amend the judgment to reduce the award to $100.
Having decided that the award to plaintiff was properly made, we must determine whether the school board is required to indemnify Greene as alleged in his third party demand. LSA-R.S. 17:416.1(B) provides:
"Should any teacher, principal or administrator in the public school system be sued for damages by any student, the parent of any student or other persons qualified to bring suit on behalf of such student based upon the act or omission of such teacher, principal or administrator in the directing of and disciplining of school children under their care and supervision, it shall be the responsibility of the school board employing such teacher, principal or administrator to provide such defendant with a legal defense to such suit including reasonable attorney's fees, investigatory costs and other related expenses. Should any such teacher, principal *73 or administrator be cast in judgment for damages in such suit, it shall be the obligation of the school board employing such defendant to indemnify him fully against such judgment including all principal, interest and costs. Nothing in this section shall require a school board to indemnify a teacher, principal or administrator against a judgment wherein there is a specific decree in the judgment that the action of the teacher, principal or administrator was malicious, and willfully and deliberately intended to cause bodily harm."
In his written reasons for judgment, the trial judge started with reference to plaintiff's claim against the school board that the school board was not responsible for Greene's "intentional, wrongful acts". However, we find nothing in the written reasons for judgment or in the language of the judgment itself clearly indicating that Greene's act was found to be "malicious, and willfully and deliberately intended to cause bodily harm". Moreover, we have found no evidence in the record that reasonably supports such a finding. Greene's act was obviously deliberate, and was the result of poor judgment on his part. However, the evidence clearly shows that it was not prompted by malice or an intent to produce bodily harm.
The trial judge's refusal to allow Greene's claim for indemnity was apparently based on his approval of the school board's argument in support of its third party demand against Horace Mann Insurance Company. At any rate, that would also explain his refusal to allow Greene's claim for attorney's fees, despite the explicit language of LSA-R.S. 17:416.1(B). The school board contends that the legislature never intended for it to be an "insurer of insurers." It argues that because Greene was covered by a professional liability policy issued by Horace Mann Insurance Company, it should not be required to pay his legal expenses or indemnify him against any judgments.
We find no merit in that argument. LSA-R.S. 17:416.1(B) is clear and unambiguous. Its provisions cannot be disregarded under the pretext of pursuing what the school board contends is the true legislative intent. LSA-C.C. art. 13. The school board has a statutorily imposed obligation to defend its teachers, principals and administrators against this kind of suit and to indemnify them fully against adverse judgments, unless there is a finding that the disciplinary act was willfully and maliciously intended to produce bodily harm. The fact that Greene had limited coverage under a private professional liability policy did not relieve it of that obligation. Greene's third party demand against the school board, should, therefore, have been allowed.
The above reasoning also applies to the school board's third party demand against Horace Mann Insurance Company. Had the legislature elected to do so, it could have granted the school board the right to seek reimbursement from its employee's private professional liability insurer. Since it did not do so, and the school board does not have a contractual relationship with the insurer, we find no legal basis for granting the relief sought.
The only remaining issue is whether the school board is entitled to recover on its third party demand against the Insurance Company of North America. As we noted earlier, the school board seeks indemnity and attorney's fees, because of the insurer's refusal to defend it. Looking to the language of the policy issued by the insurer, we find that it excludes coverage "for damages, direct or consequential, arising from bodily injury, sickness, disease or death of any person." Plaintiff's petition alleged that the damages sought arose from bodily injuries sustained by the child when he was kicked.
An insurer's obligation to defend suits brought against its insured is determined by the allegations of the plaintiff's petition. The insurer is obligated to provide a defense unless the petition unambiguously excludes coverage. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). Coverage was clearly excluded in this case. The school board is, therefore, not entitled to recover *74 on its claim against the Insurance Company of North America.
In accordance with the above, the judgment is amended to award Robert Hicks, represented by his duly qualified tutrix, Geneva McKinney, $100.00 on his claim against Larry Greene, and it is affirmed insofar as it (1) provides for that award, (2) rejects plaintiff's demands against the Sabine Parish School Board and the Insurance Company of North America, and (3) rejects the Sabine Parish School Board's demands against the Insurance Company of North America and Horace Mann Insurance Company. It is reversed insofar as it taxes defendant, Larry Greene, with all costs and fails to award him recovery against the Sabine Parish School Board for the amount of the judgment against him and reasonable attorney's fees.
We believe that an attorney's fee of $2,750.00 would be appropriate considering the nature of the case, the skill of counsel, the result achieved and the time apparently involved. Despite the fact that there were incidental actions, this was not a complex case, and the witnesses were few. The attorney's fee includes both trial and appeal.
It is ordered, adjudged and decreed that there be judgment herein in favor of Larry Greene and against the Sabine Parish School Board in the amount of $100.00, with legal interest from February 24, 1978 until paid, plus an attorney's fee in the amount of $2,750.00.
Costs of all proceedings, both in the trial court and on appeal, are taxed against the Sabine Parish School Board.
AMENDED AND AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
With respect I dissent from the majority holding in this case. Although I disagree with the finding of liability on the part of defendant, Larry Greene, I would agree to all other holdings of the majority. However, I disagree on the liability issue and would hold that Greene was not guilty of an actionable tort. To begin with, I do not consider that the evidence justifies characterizing the action of the defendant school principal as "kicking" Robert Hicks. Most importantly, I do not feel that any language in LSA-R.S. 17:416.1(A) was meant by the Louisiana Legislature to accord to local school boards the privilege of setting up standards of civil liability for intentional torts through administrative directions or prohibitions. Finally, it is my opinion that the action taken by the defendant was reasonable under the circumstances and was authorized under Section 2(b) of the resolution of the Sabine Parish School Board. Each of these points will be elaborated upon more fully below.

FACTUAL BACKGROUND
The majority opinion has correctly stated the facts. However the facts should be more fully explored to reflect the true character and nature of the action of Principal Greene, particularly to show that it is at least questionable whether his act could be properly called "kicking". I would not interpret the act of Principal Greene as "kicking" within the intendment of any portion of the Sabine Parish School Board resolution, hereinafter referred to as "Board Resolution".
Mrs. Doll Carhee, the Teacher's Aide who brought Robert Hicks and the younger boy with whom he was involved into the lunch room to Principal Greene, testified on direct examination (Tr. 149 and 150) as follows:
Q. What did Mr. Green[1] do after Robert Hicks started hitting on this Horton boy?
A. Well, he hollered several times for them to stop and they didn't.
*75 Q. What happened then?
A. Well, then he come from the counter with a spoon and a tray in his hand and he bumped Robert.
Q. What did he bump him with?
A. With the side of his foot.
Q. Where did he bump Robert?
A. On is back end.
Q. The buttocks area?
A. Yes, sir.
Q. What did Robert do?
A. Nothing.
Q. Did he continue to hit on the Horton boy?
A. No, he stopped.
Q. What did Mr. Green have him do then?
A. Go to the end of the line and get their tray and wait until lunch was served.
Mrs. Carhee testified on cross-examination (Tr. 165 and 166) as follows:
A. He yelled again.
Q. "Stop you boys", did they stop?
A. No sir.
Q. What did he do then?
A. He came from behind the counter with a spoon in one hand and a tray in the other one.
Q. What did he do then?
A. He picked up the side of his foot.
Q. He picked up the side of his foot?
A. Picked up his foot.
Q. Do you mean with his hand?
A. No, sir.
Q. With what?
A. Raised his leg.
Q. What did he do with his leg when it was raised.
A. He used the side of it on Robert.
Q. Mrs. Carhee, didn't he kick Robert?
A. Well, I don't call it a kick.
Q. How many times did he place his foot against Robert's behind?
A. Once.
Mrs. Sandra Bryan witnessed the incident in the lunch room. On direct examination she testified (Tr. 195 and 196) as follows:
Q. And you say Mr. Green hollered for them to stop?
A. Yes, sir, he hollered I don't know two or three times and they did not stop.
Q. What did Mr. Green do then?
A. After he raised his voice and they didn't stop he stepped out from behind the counter and he had a spoon in one hand and a tray of food in the other hand and he stepped out and to get their attention he lightly touched Robert in the seat with the side of his foot.
Q. What did Robert do then?
A. They stopped then, he got their attention and they stopped and Mr. Green told them something to the effect to go back and get in line that he would talk to them later.
Mrs. Bryan testified substantially the same under cross examination. (Tr. 210.)
The defendant Greene was called by counsel for plaintiffs on cross examination. When asked if he kicked Robert Hicks, he answered affirmatively and did not object to counsel using the word kick. (Tr. 72) However on direct examination (Tr. 216 and 217) he described his precise actions as follows:
Q. What part of your foot and which foot came in contact with Robert.
A. My left foot.
Q. What part of your foot?
A. The flat side of the left hand side.
Q. The left hand side of your shoe?
A. Yes, sir.
Q. Not the front part of your shoe?
A. No, sir.
Q. What were you trying to do?
A. I was trying to make them react to my command.

WAS KICKING IN THE TRUE SENSE OF THE WORD?
The trial court and the majority here found that Robert Hicks sustained no physical *76 injury. The side of Principal Greene's foot came into contact with Robert Hicks' buttocks. Therefore, in the general sense of the word Greene did kick young Hicks. Nevertheless, it is important in this context to note exactly what happened. No significant force was applied, and the point of the toe was not utilized. The action, as already noted, caused no physical harm. Clearly defendant Greene could have touched Hicks on the shoulder or have taken hold of his arm for the purpose of getting his attention. It is clear that the action was not taken as punishment, but rather to get Hicks' attention and prevent further physical contact between Hicks and the younger boy. Hence, it is simply not realistic to deem the contact of the side of the principal's foot on Hicks' hindside as a "kick" which would violate any rules of the board resolution or accepted standards of conduct between individuals under the circumstances.

LEGAL EFFECT OF THE BOARD RESOLUTION
As observed in the majority opinion, this Court held in Roy v. Continental Insurance Company, 313 So.2d 349 (La.App. 3rd Cir. 1975) that corporal punishment, reasonable in degree, is a permissible disciplinary measure, which teachers can use without becoming exposed to civil liability. I also agree with the majority statement that "[i]t is clear that in enacting LSA-R.S. 17:416.1(A) the legislature did not intend to prohibit the use of reasonable corporal punishment by teachers and school officials." Thompson v. Iberville Parish School Board, 372 So.2d 642 (La.App. 1st Cir. 1979).
Prior to the enactment of LSA-R.S. 17:416.1(A) the statutory law (LSA-R.S. 17:416) provided for disciplinary action against students in the form of suspension and expulsion only. Although the statutory authorization which existed prior to 1975 did not specifically provide for corporal punishment, as held in Roy v. Continental Insurance Company, supra, it did not prohibit it. Through Act 559 of the 1975 Session of the Louisiana Legislature which enacted LSA-R.S. 17:416.1, corporal punishment received statutory authorization. Subsection A of that statute provided for additional disciplinary measures over and beyond suspension and expulsion as provided in LSA-R.S. 17:416. The 1975 statute granted to teachers, principals, and administrators of public schools authority to "employ other reasonable disciplinary and corrective measures to maintain order in the schools...". This authority was stated to be in "addition to the specific disciplinary measures authorized in LSA-R.S. 17:416.".
The act granting the additional authority in 1975 contained the proviso that the authority was "subject to any rules as may be adopted by the parish or city school board". I differ with the majority in the construction it places on this language. The majority apparently interprets this language as permitting local boards to set or limit the form of the "other disciplinary and corrective measures" to be applied so as to affect civil liability. This is not necessarily the case. I see no reason to believe that the Legislature meant to authorize differing standards for civil liability for intentional torts growing out of unreasonable or excessive punishment administered to students by school authorities. It is just as plausible to believe that control of the matter was left to local school boards through administrative channels but to be confined to administrative action against the school official. The proviso in my opinion more probably was intended simply to allow school boards to set their own policies from an administrative point of view which would permit them to discipline the offending official. I see no reason why we must interpret the proviso as requiring that we import into our tort law the standards set by school board resolutions in legislation where the rights of litigants are concerned.
Conceivably, a particular school board might adopt standards so one-sided, and permit means or degrees of corporal or other types of punishment so harsh, that they would be unacceptable under reasonable state standards. By like token, a local *77 school board could adopt such restrictive standards that the 1975 statute would be rendered nugatory. Under such circumstances I would not agree that the courts of this State should be bound by the enactments of local school boards. Insofar as the majority holds that defendant Larry Greene was bound to observe the Sabine Parish School Board rules governing the situation, on pain of incurring civil liability to Robert Hicks, I disagree and respectfully dissent.
Under the circumstances of this case I would agree that the Sabine Parish School Board would have authority to apply its resolution, and if it felt that defendant Greene was guilty of a violation of school board policy, it could (as a purely administrative matter) take administrative action against him. The administrative action would be disciplinary in nature. It could run from a reprimand to more drastic action, provided all other laws were followed and all privileges were respected. An incident involving unreasonable or excessive punishment or control measures administered to a student may raise issues cognizable under criminal law, [see LSA-R.S. 14:18(4)], civil law for tort liability and law governing internal administrative control of school officials. Each area of law requires the application of differing considerations. As indicated above, I would interpret the proviso of the 1975 statute as pertaining to the administrative internal affairs of school systems and confine it to that.

DEFENDANT NOT CIVILLY LIABLE UNDER SCHOOL BOARD POLICY
Assuming that the Board Resolution should govern the civil liability of defendant Greene, I believe, nevertheless, that he was fully authorized by the policy expressed in the Board Resolution to do what he did. Greene was not administering punishment to Robert Hicks. He was trying to get his attention and he was trying to stop a continuation of physical contact between Robert Hicks and the younger boy.
Section 2(b) of the Board Resolution specifically authorizes the use of reasonable and appropriate physical force "to restrain a student from attacking another student or employee". This is precisely what Greene was doing. Therefore, he should not be deemed to have violated the policy established by the Board Resolution for administering corporal punishment. Greene's action was not punishment. It was restraining and preventative action.[2]
*78 For the foregoing reasons I would reject plaintiff's demand and dismiss the action against defendant Greene, the Sabine Parish School Board and the Insurance Company of North America. Therefore, I respectfully dissent.
NOTES
[1] The existence of these specific rules distinguishes this case from Thompson v. Iberville Parish School Board, supra. In that case, the court had not been fully apprised of the school board's policy on corporal punishment. The court, therefore, evaluated the teacher's conduct in terms of the general principles set out in Roy v. Continental Insurance Company, supra, which are less restrictive than the rules adopted by the school board in this case.
[1] Defendant's name is spelled Green throughout the transcript of testimony although the correct spelling is apparently Greene.
[2] The Board Resolution was adopted by the Sabine Parish School Board on December 15, 1976. Plaintiff's counsel introduced the resolution into evidence as P-1 and it appears at page 54 of the transcript. The majority opinion quotes Section 2(a) and (b) of the resolution. A second document was introduced without explanation and without objections and marked School Board Number 1. The document appears at page 66 of the transcript. The document bears the title "Corporal Punishment". However, there is no evidence as what it is supposed to represent. There is no evidence that was adopted by the Sabine Parish School Board. In fact, inspection shows that the document pertained to the Saint Landry Parish School Board and is dated October, 1977. In every place where the word Saint Landry appears, it is marked out in ink. The document purports to lay down guide lines for administering corporal punishment. It contains suggestions and some injunctions not to use certain forms of corporal punishment including pinching, slapping, striking, pulling of hair, kicking, shoving and sitting on a body for control. Even if these prohibitions represented school board policy, I regard the action of Principal Greene in this case as proper and in order for all three reasons given in this dissenting opinion. Nevertheless, it should not be given any effect as the document School Board Number 1 simply appears in the record without any key or clue as to what it is.

Although it is my view that corporal punishment as such was not involved here, but rather preventative action I subscribe to the caveat contained in the opinion in Thompson v. Iberville Parish School Board, supra, which reads as follows:
The only remaining question is whether the manner of administering the punishment was unreasonable. We do not believe that a teacher's use of his foot to make contact with a student automatically places him outside the scope of his limited immunity. Significantly, we can conceive of very few situations in which a kick, no matter how gentle, would meet the test of reasonableness. However, the situation present in the instant case is one such incident. The blow was directed to the buttocks; it was of little force, bringing more embarrassment than pain; it was a quick and effective means of getting the attention of a child who had twice turned his back to the instructor and had ignored verbal reprimands. We emphasize that we are not hereby condoning the substitution of a foot for a paddle in all cases in which use of the latter would be appropriate. We simply hold that Bourgeois acted reasonably under the particular circumstances of this case.