593 So.2d 1339 (1991)
Larry W. HALEY, Sr., Individually and as Administrator of the Estate of Larry W. Haley, Jr.
v.
Joyce McMANUS, East Feliciana Parish School Board and International Indemnity Company.
No. CA 90 1396.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
*1340 Steven R. Giglio, Baton Rouge, for plaintiff-appellee Larry W. Haley, Sr., etc.
Timothy E. Pujol, Donald T.W. Phelps, Baton Rouge, for defendants-appellants Joyce McManus, Horace Mann Ins. Co.
Richard Nevils, Baton Rouge, for defendant-appellant East Feliciana Parish School Bd.
Before COVINGTON, C.J., and SAVOIE and LEBLANC, JJ.
COVINGTON, Chief Judge.
This appeal is from a judgment of the district court which held an elementary school teacher, her malpractice insurer, the school board which employed her, and its insurer liable to the parents of a seven-year-old boy for a whipping administered to the boy on May 5, 1987, with a belt by the teacher. The parents contended at trial that the blows from the belt, which struck the boy about his head and shoulder, precipitated petit mal epileptic seizures and resulted in psychiatric treatment for overanxious disorder relating to his continued school attendance. The district court awarded plaintiffs a judgment of $10,000.00 in general damages, $1,000.00 to each parent for loss of consortium, and all costs and experts' fees, together with interest. Additionally, judgment was rendered granting indemnity to the school board and its insurer from the teacher and her malpractice insurer for all damages awarded to the plaintiffs, and dismissing the third party *1341 claims of the teacher and her malpractice insurer against the school board and its insurer.
For the reasons hereinafter stated, we reverse in part, affirm in part, and remand.
Many of the facts established at trial are undisputed. It is clear from the record that Larry Haley, Jr., is a physically attractive child who suffers from Attention Deficit Disorder with hyperactivity. This condition predated the incident herein, and was suspected but not diagnosed prior thereto, and was untreated until after the incident. It also was the cause of Larry's being a "discipline problem" throughout his kindergarten and first grade years at Jackson Elementary School, according to his former teachers and the principal. Larry had a minimal attention span, would not remain at his desk, and frequently was uncooperative with his teachers and disruptive of the classroom. Larry's parents testified that he has always been a very active child, but it is clear from the record that they did not or could not perceive the extent to which his behavior was a problem at school, and regarded him as a normal little boy. Neither Mr. nor Mrs. Haley finished high school; Mrs. Haley testified that after failing two grades, she dropped out of ninth grade to get married, and Mr. Haley dropped out of eleventh grade, working since as a diesel and gasoline mechanic and a pipe welder. The Haleys denied ever receiving a request from the school or Larry's teachers that he be evaluated because of his behavior; Mrs. Haley stated that she initiated a request to have Larry evaluated because she was concerned about his doing so poorly in school, and had discovered while visiting at a neighbor's house that this could be done. She testified that the school never obtained the necessary forms for her to sign. However, Larry's teachers and principal testified that such requests were made by them to no avail and that the Haleys would not sign the necessary authorization forms, and that all attempts to discuss Larry's problem behavior with his parents were unproductive.
On the day in question, May 5, 1987, Larry's teacher, defendant Joyce McManus, had taken a belt away from another student. She testified that she was having problems with Larry that morning, as he would not do what she told him and had called her "nigger" several times, so she told him to report to the principal. When Larry refused to go, she stated that she swung the belt to strike the desk in front of him in order to get his attention and frighten him. She did not remember striking Larry. However, on being shown photographs of the marks on Larry taken by his father later that day, she admitted that the marks corresponded to where the belt accidentally hit him.
The record establishes that Ms. McManus had received several unsatisfactory reviews of her teaching performance that year. The indication is that the basis for these reviews was an inability to properly control her students. However, the evidence also indicates that she was assigned to the class of "low achievers" among the six first grades at Jackson Elementary. Although both Ms. McManus and Shirley F. Cupit, the principal at the time, initially denied that Ms. McManus had been informed prior to this incident that she would not be recommended for rehiring the following school year, Ms. Cupit later testified that she personally delivered the letter containing this notification to Ms. McManus. The letter, which was filed into evidence, is undated. Ms. McManus testified that she did not return to school after the day of this incident and that she resigned. Therefore, she must have received this notification prior to the incident in question. Plaintiffs contend that anger over this letter, coupled with her anger at Larry personally, led to her taking her frustration out on Larry with the belt, and that the photographs of the marks on the child negate the "accidental" character of the belt strikes on him. Ms. McManus did not report this incident to anyone; the plaintiffs contacted the school and school board after Larry came home that afternoon with the marks on his face and shoulder.
*1342 The trial judge found that "... the actions of the teacher, Ms. McManus, were not maliciously, willfully and deliberately intended to cause bodily harm."[1] He further found that the school board was liable under the doctrine of respondeat superior for the "negligence" of its employee. As for the claims between the two groups of defendants, the court held that LSA-R.S. 17:416.4 was the controlling statute in this instance and that pursuant to its provisions, Ms. McManus and her insurer, Horace Mann Insurance Company, were not entitled to indemnity from the East Feliciana Parish School Board, but that the school board and its insurer, International Indemnity Company, were entitled to indemnity from McManus and Horace Mann. The court also based its decision that the school board and its insurer were entitled to indemnity on the case of Barbin v. State of Louisiana, 506 So.2d 888 (La.App. 1st Cir. 1987).
Ms. McManus and Horace Mann suspensively appealed the judgment of the district court, contending that the court erred (1) in awarding damages for loss of consortium; (2) in failing to award defense costs or indemnity to Ms. McManus from the school board; (3) in ordering Ms. McManus to indemnify the school board; and (4) in awarding excessive damages of $10,000.00.
The East Feliciana Parish School Board and International Indemnity Company suspensively appealed the judgment also, appealing only the loss of consortium awards to the parents and the amount of general damages.
Plaintiffs have answered the appeal, contending that the trial court erred in refusing to award them damages for their own mental and emotional injury pursuant to Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990).
We will turn to the questions regarding the awards of damages first.

GENERAL DAMAGES AWARD
On the day after the incident, the Haleys took Larry to see a pediatrician, Dr. Patricia M. Schneider. She testified by deposition that Larry was physically active but emotionally subdued and withdrawn; however, she also stated that this was normal for a child who sees both parents upset. She described the Haleys as very tolerant of Larry's high activity level in the past, and opined that one or the other or perhaps both parents had also suffered from Attention Deficit Disorder, which runs strongly in families. She also stated that the marks she saw on Larry, which were attributed to the belt whipping by defendant McManus, probably took four to five days, seven at the outside, to disappear. However, there was no treatment to administer for the marks.
Larry was evaluated by the Baton Rouge Psychological Associates at some point prior to July 24, 1987; the record is unclear as to the date. He was seen by a psychologist, an educational psychologist, a doctorate level social worker, and a master's level psychologist. He was referred to Dr. Louis Cenac, a psychiatrist, and seen on May 20, 1987, for treatment of Attention Deficit Disorder with hyperactivity, to rule out overanxious disorder, and to rule out mixed specific developmental disorders. Dr. Cenac testified by deposition that Larry has a low I.Q., the third percentile for children his age, and that he is mildly to severely deficient in basic academic areas. Dr. Cenac specifically attributed the overanxious disorder to the May 5, 1987 beating, and described this condition as follows: "He refused to go back to school, he had nightmares, he was uncomfortable, he was fearful, and he cried." It was Dr. Cenac's "professional guess or prognosis" that this event had "an important psychological impact" on Larry; because school is already very difficult for him, due to his ADD, developmental problems, and intellectual *1343 capacity, "[a]n event such as this could serve to derail his education." Dr. Cenac placed Larry on Ritalin and monitored him, seeing him five times between May and December, 1987. Only on his last visit in December with Larry did his records document information on petit mal epileptic seizures suffered by Larry.
Both Mr. and Mrs. Haley testified that on May 8, 1987, they first noticed Larry staring off into space, not responding to anything, and that incidents such as this began to occur more often from that point on which gradually lengthened in duration. It was also noted in school the following fall semester at the new school Larry was attending; the Haleys had moved from Jackson to Zachary so that Larry could attend school in a different system, namely East Baton Rouge Parish rather than East Feliciana Parish. Mrs. Haley testified that even though Larry was having as many as eight or nine of these spells per day, when he couldn't see or hear her and his eyes would roll back, they couldn't afford to take him to another specialist.
On April 5, 1988, Larry was seen by Dr. Barbara J. Golden, a pediatric neurologist, as a result of his continuing seizures, which had been noted in school by his teachers. Dr. Golden testified by deposition that she observed him having a seizure in her office during this visit, and described the seizures as "[s]taring spells, blinking, periods of brief loss of consciousness." She described these seizures as generally never lasting more than a minute, more typically twenty to thirty seconds. Larry's seizures lasted more briefly than that, maybe ten or fifteen seconds. Dr. Golden testified that petit mal epilepsy is a childhood disease which the vast majority of children outgrow after age twelve, and that she generally does not think of it as a trauma-induced disorder. However, she also stated that it was very possible that the trauma may have precipitated or caused an earlier onset of these seizures. Larry was placed on a medication called Zarontin to control the seizures, which has been successful, and was continuing treatment by Dr. Golden for his Attention Deficit Disorder and hyperactivity and placed on the Handicapped Children's Program, a state-funded program to assist families with handicapped children who are unable to cover the cost of the associated medical expenses.
Dr. Golden stated that the history she received from the Haleys was that these seizures began after the beating, and that although it was reasonably certain that Larry would have had these seizures at some point in the future regardless of this incident, if one believed the history, this event probably triggered the seizures to occur at this point in time.
In his oral reasons for judgment assigned on December 14, 1989, the trial judge found that the evidence established that Larry was genetically predisposed to petit mal epileptic seizures, that the Attention Deficit Disorder (ADD) with hyperactivity predated the belt incident and had in fact been diagnosed by his pediatrician prior to this time, who had actually prescribed Ritalin to treat the hyperactivity and ADD, but that Larry's parents declined putting him on this medication. He attributed no fault to the parents for this decision, stating, "It's real to assume that parents would not not [sic] want to put kids on medication for a hyperactive state until they were satisfied it was really needed. There's nothing wrong with their decision." He further stated, "I think the evidence perponderates [sic] that this incident at school certainly didn't help that condition and aggravated it to some extent." He also found that the incident at school constituted cause in fact for the onset of the petit mal epileptic seizures and "precipitated commencement of these petit mal seizures maybe sooner than he would have...," even though other factors, such as his genetic predisposition to petit mal, were present as well. The trial judge also found that the incident impacted Larry emotionally, causing nightmares for several weeks afterward and what was diagnosed by the *1344 psychiatrist who treated him subsequently as overanxious disorder. He concluded, "The Court feels that a fair award in general damages for all of these things that I mentioned, an aggravation of Attention Deficit Disorder for a period of time, some over-anxious disorder and the precipitation of the petit mal seizures, the Court feels an award of general damages of $10,000.00 is fair under the circumstances, all the facts that I've been talking about considered."
We find that the record adequately supports the facts found by the trial judge on the issue of general damages, and that his conclusions were not manifestly erroneous. We find no abuse of discretion in the amount awarded for these damages, after considering the testimony of the plaintiffs and the experts.
This assignment of error has no merit.

LOSS OF CONSORTIUM
Both the first-appellants and the second-appellants contend that the trial judge erred in awarding $1,000.00 to each parent for loss of consortium in this case.
In his reasons for judgment of December 14, 1989, the trial judge stated, "[The Haleys] did suffer some consortium loss in companionship involving the early on problems that the young Haley had with his nightmares and his fears, and really the problems involved with the seizures. The court feels an award of a thousand dollars for each parent for loss of consortium would be fair under the circumstances."
Appellants all argue that the facts of this case do not support such an award under LSA-C.C. art. 2315, and cite Armstrong v. Fireman's Fund Insurance Company, 558 So.2d 646 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990), in support of their arguments. We agree. In Armstrong, this court stated, "An award for loss of consortium is properly made where there has been some measurable or compensable loss, such as loss of love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, and felicity." 558 So.2d at p. 652. Like the plaintiffs in that case, plaintiffs here have not presented proof of a claim under any of the above listed components of lost consortium. Larry's nightmares and fears, and even his epileptic seizures, do not comprise a compensable loss of consortium for his parents.
This assignment of error has merit.

DUTY TO DEFEND
Ms. McManus and Horace Mann Insurance Company contend that the trial court erred in denying Ms. McManus defense costs from the school board. They argue that the question of indemnity is totally separate from the question of the school board's legal duty to defend its employee, which arises under LSA-R.S. 17:416.1(B).[2] They cite two cases from other circuits upholding the employee's right to a defense by the school board, McCoy v. Orleans Parish School Board, 557 So.2d 462 (La. App. 4th Cir.), writ denied, 563 So.2d 882 (La.1990), and McKinney v. Greene, 379 So.2d 69 (La.App. 3rd Cir.1979), writs denied, 381 So.2d 1233, 1235 (La.1980).
In its reasons for judgment of February 21, 1990, the trial court made the following findings on this issue:
The Court, after much study and consideration of the respective briefs, finds that at the time of the incident which forms the basis of this suit and as of the time of the filing of this lawsuit R.S. 17:416.4 and its subparts was the latest expression of legislative intent. Further, this statute begins with the phrase `Not withstanding [sic] any law to the contrary' and, therefore, the Court holds that it is the controlling statute. The Court further finds that the decision in the Third Circuit case of McKinney, supra, *1345 is not binding and furthermore is distinguishable because 17:416.4 had not yet been enacted and also the school board in that case was not found at fault as is in the instant case.
Under 17:416.4(A) the teacher is indemnified for defense costs `personally' incurred and herein the teacher, Ms. McManus, had a contractually provided defense by her insurer, Horace Mann, and is not entitled to indemnification for attorney fees.
We find that the distinguished trial judge erred on this issue. Our analysis of the two statutes in this area, LSA-R.S. 17:416.1(B) and 416.4, is that they are not in conflict, and indeed, address two different sets of circumstances. Section 416.1 addresses the specific question of discipline in the public schools, and subpart (B) relates to the incidence of lawsuits arising out of disciplinary acts by employees and administrators of the public school system of students in their care. It provides, in pertinent part:
Should any teacher, principal or administrator in the public school system be sued for damages by any student, the parent of any student or other persons qualified to bring suit on behalf of such student based upon the act or omission of such teacher, principal or administrator in the directing of and disciplining of school children under their care and supervision, it shall be the responsibility of the school board employing such teacher, principal or administrator to provide such defendant with a legal defense to such suit including reasonable attorney's fees, investigatory costs, and other related expenses. [Emphasis added.]
The language of this statute is mandatory, not discretionary. It is not conditioned upon the absence of private malpractice insurance for the employee or administrator. It contrasts, to some extent, with the language in the statute relied upon by the district court below, which addresses situations in which lawsuits arise other than in connection with the administration of discipline to students. LSA-R.S. 17:416.4[3] addresses the questions of indemnification and duty to defend teachers for their acts when in the course and scope of their employment, in all other situations not connected with discipline. This conclusion is obvious in light of the long-established codal and jurisprudential rule of construction of statutes to consider all provisions on related matters in pari materia. LSA-C.C. art. 13.
Although one of the two cases cited by appellants, McKinney, pre-dated the version of LSA-R.S. 17:416.1(B) which governs the case at bar, we agree with the pronouncements there and by our brethren in the Fourth Circuit in McCoy. The East *1346 Feliciana Parish School Board had a statutory obligation to provide a defense for its employee in this lawsuit, which arose from an act of discipline administered by the employee, regardless of the existence of personal malpractice insurance obtained by that employee.
This assignment of error has merit.

INDEMNIFICATION OF TEACHER
McManus and Horace Mann contend that regardless of which statute is applied, LSA-R.S. 17:416.1(B) or 416.4, it was error for the trial court to deny Ms. McManus the right to indemnification of the judgment against her from the school board. The trial judge applied Section 416.4 and found that because she would incur no costs personally, in view of her coverage by Horace Mann, she was not entitled to indemnity.
We agree with appellants' argument. LSA-R.S. 17:416.1(B) states, in pertinent part,
Should any such teacher, principal or administrator be cast in judgment for damages in such suit, it shall be the obligation of the school board employing such defendant to indemnify him fully against such judgment including all principal, interest, and costs. Nothing in this section shall require a school board to indemnify a teacher, principal or administrator against a judgment wherein there is a specific decree in the judgment that the action of the teacher, principal or administrator was malicious, and willfully and deliberately intended to cause bodily harm.
This language is mandatory, not discretionary, and is not conditioned upon the absence of personal malpractice coverage, as we stated above. The trial court expressly found that the actions of the teacher "were not maliciously, willfully and deliberately intended to cause bodily harm." While the photographs in evidence of the marks left upon Larry from the belt provide strong, objective proof of the deliberate character of the act, rather than accidental, this court is well aware of the firmly established jurisprudential distinction between intentional actions and intentional consequences. Therefore, we are unable to say that the trial judge's factual finding was manifestly erroneous. However, it was legal error to refuse to order indemnity by the East Feliciana Parish School Board for Ms. McManus in view of the clear language of the statute.
Even if we were to hold that on the indemnity question only, the proper statute to apply were Section 416.4, that statute provides, in pertinent part, that "... it shall be the obligation of said school board to indemnify such teacher against all reasonable costs personally incurred by the teacher in his own defense and the amount of any damages for which the teacher is cast in judgment" [emphasis added] except where there is a specific decree that the teacher's action was "maliciously, wilfully, and deliberately intended to cause bodily harm or to harass or intimidate the student." As appellants suggest in brief, the "personally incurred" limitation applies only to the costs of defense, not to the amount of damages in a judgment. Therefore, under either statute, Ms. McManus is entitled to indemnity under the facts of this case.
This assignment of error has merit.

INDEMNIFICATION OF SCHOOL BOARD
McManus and Horace Mann argue that it was error for the trial court to order that the East Feliciana Parish School Board be indemnified by McManus in light of the clear language of LSA-R.S. 9:3921(A). The trial judge held that under the rationale of Barbin v. State of Louisiana, 506 So.2d 888 (La.App. 1st Cir.1987), the school board was entitled to full indemnification from its employee, and consequently, from her insurer.
The learned trial court's reliance on Barbin was misplaced; Barbin is inapplicable *1347 herein on two bases. The first is that the employee teacher in that instance was employed by the state at a state institution, not by a parish school board. One of the two statutes relied upon by this court in that case was LSA-R.S. 13:5108.2, which excludes by definition "an official, officer, or employee of a municipality, ward, parish, special district, including without limitation a levee district, school board, parish law enforcement district, or any other political subdivision or local authority...." § 5108.2 A(2) [emphasis added]. Moreover, in Barbin, this court rejected the application of LSA-R.S. 9:3921, which statute prevents a derivatively liable employer from receiving indemnity or contribution from a primarily liable employee; we stated that the applicability of that statute was limited to situations of transaction or compromise. Since Barbin, the legislature has amended LSA-R.S. 9:3921, which now provides:
A. Notwithstanding any provision in Title III of Code Book III of Title 9 of the Louisiana Revised Statutes of 1950 to the contrary, every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed. Any remission, transaction, compromise, or other conventional discharge in favor of the employee, or any judgment rendered against him for such damage shall be valid as between the damaged creditor and the employee, and the employer shall have no right of contribution, division, or indemnification from the employee nor shall the employer be allowed to bring any incidental action under the provisions of Chapter 6 of Title I of Book II of the Louisiana Code of Civil Procedure against such employee.
B. The provisions of this Section are remedial and shall be applied retrospectively and prospectively to any cause of action for damages arising prior to, on, or after the effective date of this Section.
[Footnotes deleted; emphasis added.]
The amendment of this statute by Acts 1988, No. 401, § 1, added the phrase "or any judgment rendered against him" and became effective prior to the date of trial herein on August 21, 1989. Therefore, it was legal error for the trial court to render judgment for the school board and against McManus and Horace Mann, based on the Barbin case and in contravention of the express language in LSA-R.S. 9:3921. Such a decision also defeats the very purpose of the language in both LSA-R.S. 17:416.1 and 416.4 regarding indemnification of teachers; requiring indemnification back to the school board which has indemnified the teacher would totally negate the intent of these statutes. We will not place such a labored construction upon these provisions.
We agree with our brethren in the Third and Fourth Circuits on this issue. In McKinney v. Greene, the court recognized the statutorily imposed obligation of the school board to defend and indemnify its teachers unless there was a finding that a disciplinary act was willfully and maliciously intended to produce bodily harm. It then stated,
The above reasoning also applies to the school board's third party demand against Horace Mann Insurance Company [the teacher's private malpractice insurer]. Had the legislature elected to do so, it could have granted the school board the right to seek reimbursement from its employee's private professional liability insurer. Since it did not do so, and the school board does not have a contractual relationship with the insurer, we find no legal basis for granting the relief sought.
379 So.2d at 73.
Likewise, the court in McCoy v. Orleans Parish School Board stated,
The fact that Knight [the teacher] has limited coverage under a private professional liability policy does not relieve the School Board of the statutory obligation imposed by LSA-La. R.S. 17:416.1(B). McKinney v. Greene, 379 So.2d 69 (La. App. 3d Cir.1979). We also note that the *1348 School Board is not entitled to indemnification by Knight's private professional liability insurer in the event that the Board is required under La.R.S. 17:416.1 to indemnify Knight against a judgment. Id.
557 So.2d at 464.
This assignment of error has merit.

EMOTIONAL DISTRESS DAMAGES
The plaintiffs answered the appeals herein, contending that the trial court erred in denying them damages for their mental anguish under the rationale of Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990).
Our Supreme Court set forth in Lejeune specific modifications and restrictions on mental pain and anguish claims arising out of injuries to third persons. Without entering into a detailed discussion of these criteria in this instance, we find that the plaintiffs fail to meet their burden of proof with regard to the third requisite listed by the Court, that the emotional distress sustained by the claimant be both serious and reasonably foreseeable. In explaining this requirement, the Court stated, "Serious emotional distress, of course, goes well beyond simple mental pain and anguish.... A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock." 556 So.2d at 570.
Plaintiffs fall short of proving any such serious emotional distress on their part because of the injuries sustained by Larry. Thus, we cannot say that the trial judge was in error in denying their claim.
This assignment of error has no merit.

CONCLUSION
For the foregoing reasons, we affirm that portion of the judgment of the district court which awarded the plaintiffs general damages in the amount of $10,000.00, together with all costs and interest. We reverse those portions of the judgment awarding plaintiffs damages for loss of consortium, and awarding the East Feliciana School Board and International Indemnity Company indemnification against Joyce McManus and Horace Mann Insurance Company. We also reverse that portion of the judgment which dismissed the third party demands of Joyce McManus and Horace Mann Insurance Company against the East Feliciana Parish School Board and International Indemnity Company for costs of defense and for indemnification, render judgment in favor of Joyce McManus and against the East Feliciana School Board in the amount of $10,000.00, together with all costs and interest, and remand the matter so that the trial court may consider evidence regarding the costs of defense for Ms. McManus and enter a decree in accordance with the views expressed herein.
Costs of this appeal in the amount of $1,112.01 are assessed to the East Feliciana Parish School Board and International Indemnity Company.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED.
NOTES
[1] Oral reasons for judgment assigned on February 21, 1990, when the trial court considered the third party demands of the defendants. Oral reasons for judgment on the merits of plaintiffs' demands were assigned on December 14, 1989.
[2] This statute has subsequently been amended and renumbered, and subpart B has, with little modification, been renumbered as subpart C. Acts 1988, No. 898, § 1.
[3] LSA-R.S. 17:416.4 provides,

A. Notwithstanding any law to the contrary, should any teacher in the public school system be sued for damages by any student or any person qualified to bring suit on behalf of any student based on any action or statement or the omission of any action or statement by such teacher when in the proper course and scope of his duties as defined by the school board employing such teacher, then it shall be the obligation of said school board to indemnify such teacher against all reasonable costs personally incurred by the teacher in his own defense and the amount of any damages for which the teacher is cast in judgment; except as follows:
(1) The school board shall not be responsible for any costs which the court stipulates are to be borne by a party other than the teacher or school board.
(2) The school board shall not be responsible for the costs of defending the action unless it declined the teacher's request for adequate representation or declined to assist counsel for the teacher.
B. If the school board provided the defense and the judgment makes an award to the teacher for damages or other awards for costs or any fees, the teacher shall reimburse the school board for its costs incurred for the defense. The requirement of reimbursement by the teacher may not exceed the award received by the teacher.
C. Nothing in this Section shall require a school board to indemnify a teacher against a judgment wherein there is a specific decree in the judgment that the action of the teacher was maliciously, wilfully, and deliberately intended to cause bodily harm or to harass or intimidate the student.