759 So.2d 800 (1999)
Pamela YOUNG, et al.
v.
ST. LANDRY PARISH SCHOOL BOARD, et al.
No. 99-581.
Court of Appeal of Louisiana, Third Circuit.
December 15, 1999.
Writ Denied March 17, 2000.
*801 Chris Villemarette, Alexandria, LA, for Pamela P. Young, et al.
L. Lane Roy, Lafayette, LA, for St. Landry Parish School Board, et al.
BEFORE: THIBODEAUX, COOKS and WOODARD, Judges.
COOKS, Judge.
Pamela Young, individually and as administratrix of the estate of her minor son, Daniel Mark Prudhomme, appeals the judgment of the trial court which exonerated Mr. Anthony Fisher and his employer, the St. Landry Parish School Board, from liability for an alleged battery upon Daniel during school hours. For the following reasons, we affirm.

FACTS
On November 16, 1995, at approximately 12:15 p.m., Daniel Prudhomme was in a French class taught by the defendant, Mr. Anthony Fisher. Daniel was an eleven-year-old sixth grade student at Central Middle School in Eunice, Louisiana.
During class that day, the students were viewing college yearbooks as part of a class assignment. Daniel was bothering a female student during the class activity and he was instructed by Mr. Fisher on more than one occasion to discontinue his inappropriate behavior. When Daniel refused to cease misbehaving, Mr. Fisher approached him, grabbed his jacket collar, and pulled him away from the other students. At this point, the stories vary. Mr. Fisher alleges Daniel tripped on the leg of a nearby desk and accidentally fell to the floor. Daniel claims the force used by Mr. Fisher tore the collar of his wind-breaker causing him to fall and injure himself. After the incident, Daniel returned to his desk for the remainder of the class.
Casselina Young, a student in the French class, witnessed the incident and testified as follows:
Q. Would you please tell the court what you saw and heard in the classroom that day, please?
A. Okay, the students were standing around and sitting down looking at yearbooks and Daniel kept bothering Crystal and Mr. Fisher told Daniel a couple of times to leave her alone but Daniel didn't listen to him and he continued to bother Crystal. Mr. Fisher got up, grabbed Daniel, and Daniel fell and Mr. Fisher helped him up.
Q. Okay. Now you heard Daniel testify here a little bit earlier?
A. Yes, sir.
Q. Daniel, I think, indicated that there wasn't any particular statement made directly to him but to the whole class by Mr. Fisher. Would you tell me, and you *802 were in the classroom, with Mr. Fisher directing his comments to Daniel?
A. Yes, sir.
Q. Okay, was Daniel doing something that he shouldn't have been doing?
A. He kept bothering Crystal.
Q. Okay, and Crystal was one of the other students in the classroom?
A. Yes, sir.
Q. Did Daniel pay attention or did he follow the instructions of Mr. Fisher?
A. No, sir.
Q. Did he change his activity in any way when Mr. Fisher asked him not to?
A. No, sir.
Q. And you said that Mr. Fisher asked Daniel on two different occasions to stop what he was doing?
A. Yes, sir.
Q. And it didn't make any difference?
A. No, sir.
Q. And after he did not follow Mr. Fisher's instruction, Mr. Fisher went toward him?
A. Yes, sir.
Q. And what did Mr. Fisher do at that point?
A. At that point he like pulled Daniel back and Daniel fell and he helped him up.
Q. Pulled Daniel away from 
A. Crystal.
Q. From Crystal, okay. It's been testified that Mr. Fisher may have picked Daniel up and thrown him to the ground. Did that happen?
A. No, sir.
Q. You said heMr. Fisher pulled Daniel away from Crystal and Daniel fell?
A. Yes, sir.
Q. Do you know what caused him to fall?
A. He could have hit the trash can but I'm not too sure about that.
Q. From what you saw, Ms. Young,
A. Yes.
Q. did Mr. Fisher do anything that forced Daniel to fall?
A. No, sir.
Q. Did it appear to you that Mr. Fisher tried to cause him to fall?
A. No, sir.
The evening of the incident, Daniel's stepfather (Oleus Young) filed a battery complaint against Mr. Fisher. After an investigation, no charges were instituted. That same day, Daniel went to the emergency room for treatment, complaining he had tenderness over his lower back and right ankle. No bruising was evident, and x-rays of Daniel's lower back were unremarkable. No objective signs of injury were noted and no medication was prescribed. Over the course of the next year, Daniel underwent extensive medical treatment from a chiropractor.
Daniel's mother, Mrs. Pamela Young, filed suit against the St. Landry Parish School Board, Titan Indemnity Company and Anthony Fisher alleging the force used by Mr. Fisher on Daniel constituted a battery and that force caused Daniel to suffer serious and debilitating injuries. Mrs. Young later amended her petition for damages, deleting Titan and adding Coregis Insurance Company as the liability insurer of the St. Landry Parish School Board.
After a bench trial, plaintiffs' claim was dismissed with prejudice. The trial court found the plaintiffs "failed to demonstrate that [Mr. Fisher] committed a battery on Daniel or that the physical force used by [Mr. Fisher] on Daniel was unreasonable under the circumstances." This appeal followed. Plaintiffs assert the following assignments of error:
1. The trial court erred in failing to find Anthony Fisher committed a battery upon Daniel Prudhomme.
2. The trial court erred in finding Mr. Fisher was justified in committing a battery upon Daniel Prudhomme.

*803 3. The trial court erred by finding for the defendants based on an affirmative defense which was not specifically pled.
4. The trial court erred by failing to award plaintiffs damages for the injuries sustained by Daniel Prudhomme.

LAW AND DISCUSSION
Factual findings by the trial court cannot be set aside in the absence of manifest error or unless the findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). This court must review the record in its entirety to determine whether the factfinder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
In Jones on Behalf of Cooper v. W.T. Henning Elementary School Principal, 98-470, p. 3 (La.App. 3 Cir. 10/28/98); 721 So.2d 530, 532, addressing the role of discipline in our schools, we stated:
The primary objective of school officials and teachers is the education of the young people in their charge. If a teacher, or principal, is unable to establish discipline and maintain an orderly learning environment, the objective of education cannot be met. In today's society, where educators must compete for their students' attention against numerous outside influences, there is a greater necessity to ensure that students are given the opportunity to learn in a positive and orderly environment free from distractions.
We have conducted our review of this matter in light of these objectives and conclude no error was committed by the trial court.
The parties first banter whether a battery was committed by Mr. Fisher against Daniel. Whether a battery was committed is not the dispositive question in this case. La.R.S. 17:223 grants teachers the discretion to use corporal punishment to maintain discipline in the classroom. It matters not whether Mr. Fisher's touching of Daniel constituted a battery because this statute provides:
A. Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school or on the playground of a school, or on any school bus going to or returning from school, or during intermission or recess. Each parish and city school board shall have discretion in the use of corporal punishment....
Of course the use of corporal punishment must be "reasonable" in degree. The only question then is whether Mr. Fisher's grabbing of Daniel's collar in an effort to pull him away was unreasonable under the circumstances.
The trial court, after hearing the testimony of the witnesses, determined that the action taken by Mr. Fisher was protective discipline reasonable in nature. Daniel was creating a disturbance in the classroom, and refused to listen to the demands of his teacher to behave. Mr. Fisher grabbed Daniel's collar in an attempt to remove him from the vicinity of the other students and to restore order in the class. When "order" is disrupted in a classroom, it frustrates the learning process which every teacher has a duty to maintain. Mr. Fisher's did not intend to harm Daniel. We find no error in the trial court's conclusion that plaintiffs failed to prove the physical force used by Mr. Fisher on Daniel was unreasonable under the circumstances.
Nonetheless, plaintiffs assert defendants' reliance on the discretionary use of corporal punishment was an affirmative defense which they were required to raise prior to trial. We disagree. An affirmative defense is one which raises new matter not covered in the plaintiffs petition and which will have the effect of defeating plaintiffs demand on its merits. Keller v. Amedeo, 512 So.2d 385 (La.1987). The general purpose in requiring certain defenses to be affirmatively pled is to give *804 the plaintiff fair notice of the nature of the defense, thus preventing a last minute surprise to the plaintiff. Trahan v. Gerber Food Products, Inc., 520 So.2d 956 (La. App. 3 Cir.1987), writ denied, 522 So.2d 563 (La.1988); Mashburn Agency v. Universal Engineering, 451 So.2d 113 (La. App. 3 Cir.1984).
Teachers by law are authorized to use reasonable force to maintain order in the classroom or on school grounds. Evidence that Mr. Fisher was authorized to grasp Daniel because he was attempting to maintain order in his classroom rebutted plaintiffs' claim that the physical force used by him was unreasonable under the circumstances. Defendants were not required to list as an affirmative defense that Mr. Fisher's actions were reasonable. In answer to plaintiffs' pleadings, which asserted Mr. Fisher used unreasonable force, defendants affirmatively denied that he did; that is all the rules of evidence demand they do and say prior to trial. This assignment of error lacks merit.
Having found the trial court did not err in dismissing plaintiffs' case with prejudice, plaintiffs' contention that the trial court erred by failing to award damages is rendered moot.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, J., dissenting.
A young student incurs $11,720.00 in chiropractic bills and orthopedic bills of approximately $3,800.00. One of the orthopedists, Dr. Michael Heard, confirms the injuries which was the subject of treatment by the chiropractor. Even the orthopedic surgeon who testified for the School Board admitted that the injuries were legitimate. Notwithstanding the existence of this evidence, the majority finds that the force used by Mr. Fisher was "reasonable."
"Fathers and mothers may, during their life, delegate a part of their authority to teachers, schoolmasters and others to whom they intrust their children for their education, such as the power of restraint and correction, so far as may be necessary to answer the purposes for which they employ them." La.Civ.Code art. 220. This delegation of authority to educators is necessary in order to aid teachers and other school officials in maintaining discipline in our schools. Louisiana Revised Statutes 17:416.1(A) provides that "teachers, principals, and administrators (in) the public schools may, subject to any rules as may be adopted by the parish or city school board, employ other reasonable disciplinary and corrective measures to maintain order in the schools...." Prior to the enactment of this provision, we held that a teacher has the duty of maintaining discipline and good order in the school, in addition to being responsible for the progress, conduct, and education of children. Roy v. Continental Ins. Co., 313 So.2d 349 (La.App. 3 Cir.), writ denied, 318 So.2d 47 (La.1975). Corporal punishment, reasonable in degree, administered by a teacher to a pupil for disciplinary reasons has been permitted and this punishment can be used without subjecting teachers to civil liability. Id.
McKinney v. Greene, 379 So.2d 69 (La. App. 3 Cir.1979) is instructive for the purposes of analyzing this case. In McKinney, Robert Hicks, a thirteen-year-old special education student, had been seen attacking a younger student on the playground. The playground supervisor saw the attack and took the boys to the cafeteria where the principal, Larry Greene, was assisting with serving lunch. As the playground supervisor explained the events to Mr. Greene, Robert began pushing the other boy, apparently attempting to start a fight. On three occasions, Mr. Greene *805 ordered Robert to back off. After Robert did not cease his behavior, Mr. Greene, who had a lunch tray in one hand and a serving spoon in the other hand, walked around the serving counter and kicked Robert in the buttocks with the side of his shoe. We concluded that Mr. Greene's actions were not reasonable and appropriate under the circumstances. An emergency situation did not exist in McKinney, just as one did not exist in the present case.
St. Landry Parish School Board urges that we apply the concept of in loco parentis in this case. I find no merit in this argument. Although I agree with the trial court that a teacher has a duty to maintain good order in school and, in standing in loco parentis, may employ the force which parents might use to discipline their children, I disagree that the circumstances in this instance allows the application of this concept.
Louisiana Revised Statutes 17:416(A)(1)(c)(I) unambiguously provides teachers with options of discipline when a student is misbehaving.

When a pupil's behavior prevents the orderly instruction of other pupils, or poses an immediate threat to the safety or physical well being of any pupil or teacher, or when a pupil exhibits disrespectful behavior toward the teacher such as using foul or abusive language directed at a teacher or threatening a teacher, the teacher may have the pupil immediately removed from his classroom and placed in the custody of the principal or his designee. (Emphasis ours).
The circumstances surrounding this case did not confine Mr. Fisher to only one manner of discipline. Mr. Fisher admitted he could have employed alternative methods of discipline, such as bringing Daniel to the principal's office; however, he failed to do so. As a result of this failure, Daniel Prudhomme sustained injuries which resulted from Mr. Fisher's chosen method of discipline which happened to be, in my view, unreasonable and negligent.
According to testimony of Dr. Kevin Miller, Daniel's chiropractor, Daniel's initial visit was on November 27, 1995, eleven days after the incident at school. Daniel complained of low back pain that became sharp with certain motions and occasional pain between his shoulders. Dr. Miller testified that Daniel's ankle was bruised a little bit. The pain was aggravated by prolonged sitting, prolonged standing, sleeping in the wrong position, running, jumping or any sudden or unexpected movements. Dr. Miller noticed edema, or swelling, of the spine. There was also a diagnosis of a mild hypolardosis, or a loss of normal curvature, in Daniel's neck. This loss of normal curvature in Daniel's neck evidenced the probability that Daniel had undergone some trauma. Dr. Miller also diagnosed a "malalignment" of Daniel's pelvis. Dr. Miller recommended some massage therapy and limitation of some activities.
Dr. Heard testified that he first examined Daniel on April 30, 1996. This examination occurred after Daniel had been seen by Dr. Reginald P. Segar. Dr. Heard also testified there was no indication that Daniel had any kind of back problems prior to the incident of November 16, 1995. Upon conducting subjective examinations on Daniel, Dr. Heard found some stiffness in Daniel's back. He also discovered that Daniel had mild limitation when he bent to the side and backwards. Daniel also had subjective tenderness in his low back area. The objective testing indicated neurological deficits. X-rays were taken of Daniel's back and were normal. This was an indication to Dr. Heard that Daniel had a soft tissue injury. Dr. Heard also noted tightness in Daniel's hamstrings. Dr. Heard expressed in his testimony that it looked like Daniel had ongoing chronic pain as of the time Dr. Heard saw him last on July 8, 1997. Dr. Heard adamantly approved of Daniel's chiropractic treatment.
*806 Dr. Joseph Frazier Gaar, an orthopedic surgeon called by the defendants, saw Daniel Prudhomme on March 19, 1998, two years and four months after the school incident involving Daniel and Anthony Fisher. Dr. Gaar testified that at this visit, Daniel complained of some discomfort in the lower back which occurred mainly at night when he was in bed or when sitting at his desk for prolonged periods of time. Dr. Gaar, like Dr. Heard, noticed tightness in Daniel's hamstrings. Dr. Gaar also testified that there was a little tenderness in Daniel's lower back area. Dr. Gaar acknowledged that Daniel probably initially sustained a contusion or sprain of the ankle or the lower back area. He also admitted that the injured areas had been treated appropriately and resolved with the time involved.
Given these facts, which the majority chooses not to discuss, I find it difficult to understand how the majority could rationally reach its unsupported conclusion.
For the foregoing reason, I dissent.