558 So.2d 646 (1990)
Charles F. ARMSTRONG and Corrie E. Armstrong
v.
FIREMAN'S FUND INSURANCE COMPANY, et al.
No. CA 88 2015.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Writ Denied April 27, 1990.
*647 S. Alfred Adams, Baton Rouge, for plaintiff-appellant Charles F. Armstrong, et ux.
Eugene Groves, Baton Rouge, for defendant-appellee Fireman's Fund Ins., J & R Canteen, Inc., and Eugene Ringswald.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
The plaintiffs, Charles F. Armstrong and Corrie E. Armstrong, appeal the judgment rendered in accordance with the jury's verdict awarding Mrs. Armstrong $2,000.00 for past and future pain and suffering, $325.00 for maid service, $7,500.00 for impairment of earning capacity and denying her claims for past and future mental anguish and distress, future medical expenses, past loss of income, and future loss of income and denying Armstrong's claim for loss of consortium. The defendants, Fireman's Fund Insurance Company, J & R Canteen, Inc. (J & R), and Eugene Ringswald[1] answered the appeal.

FACTUAL BACKGROUND
On August 12, 1983, at approximately 1:00 p.m., Corrie Armstrong, who was operating her 1978 Cadillac, was preparing to enter onto I-10 from Siegen Lane near Baton Rouge, Louisiana. In attempting to merge onto the interstate, Mrs. Armstrong stopped because of oncoming traffic and her vehicle was struck from the rear by a 1982 one-half ton pickup truck owned by J & R and operated by Ringswald, who was acting in the course and scope of his employment. The accident was a minor one, with Ringswald bumping the rear of Mrs. Armstrong's vehicle. The property damage to Mrs. Armstrong's vehicle consisted of some damage to a rubber portion of the bumper; Ringswald's vehicle was not damaged. However, Mrs. Armstrong immediately complained of back pain and later contended she experienced a mental condition, post-traumatic stress disorder, because of the accident.

*648 PROCEDURAL HISTORY
The Armstrongs filed suit against Ringswald, J & R as owner of the vehicle Ringswald was operating, and Fireman's Fund as J & R's insurer. A jury trial was held, and the jury returned its special verdict form assessing Ringswald with 100 percent fault and finding that the Armstrongs sustained damages as a result of the accident as follows:

a. Corrie Armstrong
 (1) Past and future pain
 and suffering $2,000.00
 (2) Past and future mental
 anguish and emotional
 distress -0-
 (3) Maid Service $ 325.00
 (4) Future mental expenses -0-
 (5) Past loss of income -0-
 (6) Future loss of income -0-
 (7) Impairment of earning
 capacity $7,500.00
 TOTAL $9,825.00
b. Charles Armstrong
 (1) Loss of consortium $ -0-

A judgment was prepared and signed in accordance with the jury's verdict. Additionally, the judge awarded legal interest, costs and fixed the expert witness fees.
The Armstrongs filed a motion for judgment notwithstanding the verdict, for a new trial and for additur, which was denied. The Armstrongs then perfected this devolutive appeal, alleging that the jury erred in making (1) an inadequate award for physical pain and suffering, (2) no award for mental anguish and emotional distress, (3) an inadequate award, or in some instances, no award, on elements of special damage and (4) no award for loss of consortium. The defendants answered the appeal, alleging that the jury erred (1) in finding defendants liable and (2) in awarding Mrs. Armstrong damages for loss of earning capacity.

DEFENDANTS' LIABILITY
Defendants allege that the jury erred in finding them liable for Mrs. Armstrong's injuries and/or in failing to attribute any percentage of fault to Mrs. Armstrong.
It is well settled jurisprudentially that the triers' findings of facts will not be disturbed unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). A review of the record shows that Ringswald admitted to bumping the rear of Mrs. Armstrong's vehicle. He noted that her brake lights were on and that when they went off, he assumed that she was going to pull out so he relaxed the pressure of his brakes and struck her. Defendants contend that Mrs. Armstrong created a sudden emergency which exonerates them of liability, or at least, renders her comparatively negligent. This circuit discussed in detail the sudden emergency doctrine in regard to a rear end collision in Fontenot v. Boehm, 512 So.2d 1192 (La. App. 1st Cir.1987). This doctrine provides an exception to the general rule that a following motorist is presumed negligent if he collides with the rear of a leading vehicle; i.e., when a following motorist is suddenly confronted with an unanticipated hazard created by a foward vehicle, which could not be reasonably avoided, the following driver will be adjudged free from fault. As stated in Boehm, 512 So.2d at 1194, it is the unanticipated hazard which is the foundation for invoking the sudden emergency doctrine. Here it is apparent that Ringswald noted that Mrs. Armstrong was stopped and should have anticipated that she might remain stopped or stop again while determining if it was safe to enter upon a heavily traveled interstate. Additionally, he was well aware that the roadway was wet from rain. Thus, Ringswald was negligent in failing to keep a proper lookout and following too closely and cannot invoke the sudden emergency doctrine to defend himself. This assignment of error is without merit.

PHYSICAL PAIN AND SUFFERING
Plaintiffs contend that the jury erred by making an inadequate award for physical pain and suffering. The trier of fact is given great discretion in the award of damages and the decision of the trial court should be affirmed unless the award represents an abuse of discretion. Only after determining that the record clearly supports a finding that the lower court abused its much discretion can the appellate *649 court disturb the award, and then only to the extent of lowering it to the highest point or raising it to the lowest point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Immediately following the accident, Mrs. Armstrong complained of back pain and she consulted the orthorpedist who had performed a spinal fusion on her in 1978, Dr. Hyman R. Soboloff. Following the 1983 accident, Dr. Soboloff first saw her at his office in New Orleans on August 16, 1983, at which time he found she had sustained a moderate lumbosacral strain with no damage to the prior fusion. Dr. Soboloff prescribed muscle relaxants, told her to use heat and a non-narcotic analgesic and advised her to restrict her activities such as work. Mrs. Armstrong, a realtor, owned and operated Villa Realty Corporation in Baton Rouge. Dr. Soboloff continued to treat Mrs. Armstrong over the next four months, allowing her to gradually return to work and other activities. On December 13, 1983, he told her she could return to a full day's work because of a subsidence of symptoms, but that she was to recheck with him in four to six weeks. She returned on January 17, 1984, complaining of pain, which he referred to as a flare-up brought on by her return to unrestricted work. At that time, he took additional x-rays which confirmed that the prior fusion was stable. Dr. Soboloff testified, in his deposition of September 11, 1985, that she called him a week after her January 17, 1984, visit to advise that she felt better.[2] Her next and last visit with Dr. Soboloff was on June 11, 1984, at which time he found that she had returned to approximately the same condition as after her discharge from back surgery, with about the same restriction in motion as she had previously.
Dr. Soboloff testified that Mrs. Armstrong had lost between 25 to 30 percent mobility in her back as a result of the spinal fusion he had performed in 1978 following a prior automobile accident. Additionally, he stated that a person who has had a fusion has problems with riding or sitting for long periods of time and would continue to experience flair-ups periodically.
Mrs. Armstrong testified that her back has continued to hurt whenever she gets in a car and that she has been unable to work, both because of the physical pain and her fear of riding in cars. Other witnesses, including her husband, a friend and a former agent for Villa Realty, testified as to her complaints of pain and her actions when riding in a vehicle since the 1983 accident.
The trier of fact, be it judge or jury, should assess the credibility of the witnesses, expert or lay, to determine which evidence is the most credible and realistic. In reaching conclusions, the trier of fact need not accept all of the testimony of any witness and may believe and reject parts of a witness's testimony. Combs v. Hartford Insurance Company, 544 So.2d 583 (La. App. 1st Cir.1989). While we do not have the benefit of an explanation as to how the jury arrived at the award, we can conclude that the jury did not accept that the 1983 accident has caused plaintiff any continuing physical problems. We find no manifest error in such a determination, and we find that the jury's award for pain and suffering was not so unreasonable or inadequate as to constitute an abuse of discretion.

MENTAL ANGUISH AND EMOTIONAL DISTRESS/FUTURE MEDICAL EXPENSES
Plaintiffs also complain that the jury erred by failing to award any damages for past and future mental anguish and emotional distress, and in failing to award future medical expenses for her psychiatric treatment.
It is well settled jurisprudentially that the trier of fact, actually hearing and observing witnesses give live testimony, is in a better position to evaluate credibility than a reviewing court on the intermediate level, *650 which at best can only study the written words of a cold record. Burbank v. Lebeouf, 471 So.2d 980 (La.App. 1st Cir.1985). Therefore, the reviewing court must give great weight to conclusions of the trier of facts, and where there is conflict in the testimony, should not disturb reasonable evaluations of credibility and reasonable inferences of fact, even though other evaluations and inferences are as reasonable. Rosell v. Esco, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. 549 So.2d at 844.
In the instant case, Mrs. Armstrong claims that she suffers from post-traumatic stress disorder. On her final visit to Dr. Soboloff, she complained to him about feeling apprehensive about riding in cars and he recommended that she have a psychiatric evaluation. She consulted Dr. Louis Cenac, a psychiatrist, who diagnosed post-traumatic stress disorder and psychiatric disorder affecting physical condition. In his testimony, he stated he first treated her in September of 1984. At that time Mrs. Armstrong complained of an increased appetite, extreme nervousness, pain in her leg, sleeping problems, fear of cars and nightmares. He described her mental state as one of fearful tension. He found her to be suffering from anxiety and depression and a phobic fear about cars which inhibited her physical recovery from the accident. Dr. Cenac ran the standard psychiatric tests on Mrs. Armstrong and recommended therapy for her. Either he or someone in his office saw her four times between October 1984 and July 1985, five times in 1986 and once in 1988, shortly before trial. During this period of time, Dr. Cenac placed her on Elavil, which caused her to gain weight. At the time of her last visit in May of 1988, he found her to still be suffering from the same problems and opined that she would require treatment for several years.
Mrs. Armstrong's husband, friend and the former Villa Realty agent all testified to her extreme nervousness around cars, either while riding or driving. However, her friend had not ridden with her for two years prior to trial, and the business associate had ceased working with her in 1984 or early 1985. Mrs. Armstrong, while claiming that she was fearful around vehicles and unable to drive so as to work, admitted that she did still ride in and drive automobiles, but that other persons did not like to ride with her because of her actions. She stated she was unable to drive during peak traffic hours or in rainy conditions and was unable to undergo long trips, even as a passenger.
The defendants' expert, Dr. Clayton V. Edison, a psychiatrist, did not examine Mrs. Armstrong personally. He reviewed the tests run on her by Dr. Cenac, Dr. Cenac's file notes, Dr. Soboloff's reports and deposition, Mrs. Armstrong's deposition and Dr. Cenac's deposition. He was questioned at length about the psychiatric tests run on Mrs. Armstrong and her responses to them and found that Mrs. Armstrong did not have a neurotic process that was interfering with her life in many important dimensions. He also stated that from reviewing the material, Dr. Cenac did not have sufficient information to form a diagnosis of post-traumatic stress disorder based on reasonable medical probabilities since Mrs. Armstrong did not present a history of an accident that was above and beyond the usual realm of human experience, a requisite for the diagnosis of post-traumatic stress syndrome. He did not find Mrs. Armstrong's accident of August 1983, to be outside the range of human experience or catastrophe, even when superimposed on her prior accident in which she was severely injured.
After weighing and evaluating all of the evidence, a jury is free to accept or reject the opinion expressed by experts. Combs, 544 So.2d at 590. It is apparent that the jury did not accept the diagnosis of post-traumatic stress disorder expressed by plaintiff's expert, and that they did not feel she needed any future medical attention as a result of this accident. We cannot say that these determinations were manifestly erroneous; however, there was sufficient, unrebutted proof in the record to show that she suffered at least some mental anxiety *651 and emotional distress as a result of the August 1983 accident. In light of this, the failure of the jury to award any damages for mental anguish is clearly wrong. We are of the opinion that $5,000.00 will sufficiently compensate plaintiff for her mental injury.

MAID SERVICES/PAST AND FUTURE LOSS OF INCOME
Plaintiffs contend that the jury erred in only awarding $325.00 in maid services, since she presented receipts for $8,250.00. However, a review of the receipts shows that they were for a period from January of 1984, through January 27, 1987. As we have previously stated, the jury was not manifestly erroneous in determining that Mrs. Armstrong's continuing problems and need for housework assistance were not caused by the August 1983 accident. There was evidence in the record that Mrs. Armstrong was prohibited from heavy housework as a result of her prior accident. Therefore, we find no abuse of discretion in this award for maid services.
Plaintiffs also contend that the jury erred in failing to award Mrs. Armstrong past and future loss of income. A review of the evidence shows that Mrs. Armstrong operated Villa Realty without receiving any wages from the corporation, even though she was the firm's primary agent. The jury, in refusing to award past and future loss of income, obviously determined that the plaintiff had recovered to the point to be able to return to work within a few months. They also apparently determined that any loss she sustained, since she was not receiving wages, was a temporary impairment of her earning capacity. After a thorough review of the record, we are unable to say that the jury was manifestly wrong.

IMPAIRMENT OF EARNING CAPACITY
Plaintiffs claim that the jury erred in awarding insufficient compensation for Mrs. Armstrong's loss of earning capacity; defendants claim that the jury erred in awarding Mrs. Armstrong any damages for loss of earning capacity. As stated previously, it is apparent that the jury determined that it was Mrs. Armstrong's earning capacity that was affected by the 1983 accident and not her income as such.
Tax records for Villa Realty that were introduced into evidence showed that Mrs. Armstrong, although the principal agent for Villa Realty, did not personally receive compensation for any realty sold by her and through her agency. Testimony and evidence showed that the realty firm suffered a loss of more than $25,000.00 in gross income for the 1983/84 fiscal year (May to May) as compared to the 1982/83 fiscal year and prior fiscal years. Villa Realty has continued to show diminished income every year since Mrs. Armstrong's accident. Experts testified for both sides with plaintiffs' expert stating that the firm's loss was directly attributable to Mrs. Armstrong's failure to work and defendants' expert explaining that the firm's continued loss could be attributed to the severe downturn in the real estate market in Baton Rouge. However, it was apparent from the record that 1982/83 was a good year for the realty market in Baton Rouge. Thus, it is apparent that the jury had information upon which to base their determination that Mrs. Armstrong's earning capacity for that fiscal year was impaired to some extent. See Folse v. Fakouri, 371 So.2d 1120 (La.1979). It is also apparent from their award of $7,500.00, coupled with their other awards, that the jury did not find any permanent impairment as a result of the accident. We find no manifest error in this determination.
As stated in Henry v. National Union Fire Insurance Company, 542 So.2d 102, 107 (La.App. 1st Cir), writs denied, 544 So.2d 405 (La.1989):
An award for loss of earning capacity is inherently speculative and cannot be calculated with absolute certainty. The most the courts can do is exercise sound discretion and make an award that in light of all facts and circumstances is fair to both parties while not being unduly oppressive to either....

*652 . . . .
The Louisiana Supreme Court has specifically ruled that "impairment of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed." Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La.1980).
The jury heard and considered the testimony of Mrs. Armstrong, her expert economist and defendants' expert in real estate. The jury was entitled to determine from these and other factors in the record the probabilities and estimates of plaintiff's ability to earn. This determination will not be overturned on appeal unless there is a showing that the jury abused its discretion. We find no abuse of discretion in this case; therefore, these assignments of error are meritless.

LOSS OF CONSORTIUM
Plaintiffs also challenge the jury's failure to award loss of consortium damages to Mr. Armstrong. An award for loss of consortium is properly made where there has been some measurable or compensable loss, such as loss of love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, and felicity. La.Civ.Code art. 2315; Johnmeyer v. Creel, 499 So.2d 571 (La.App. 2d Cir.1986).
Mr. Armstrong testified that since the accident his wife has been nervous and tense when either riding or driving, that she has quit entertaining as much as before and that she is withdrawn and depressed. He also indicated that he had to help around the house. He advised that his work kept him away from Baton Rouge for long periods of time. Mr. Armstrong's testimony fails to support a claim under any of the above listed components of lost consortium.

CONCLUSION
For the foregoing reasons, we reverse the jury's verdict and the judgment as to mental anguish and emotional distress and award Mrs. Armstrong $5,000.00 in damages, together with legal interest from date of judicial demand. We affirm the verdict of the jury and the judgment thereon in all other respects. Therefore, we amend the judgment to read "in the amount of $14,825.00." Costs of this appeal are to be borne equally by the plaintiffs and defendants.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] Ringswald died prior to trial and his discovery deposition was read into the record.
[2] Dr. Soboloff died prior to trial and his deposition taken on September 11, 1985, was read into the record as well as portions of a deposition taken on February 7, 1979.