744 So.2d 54 (1998)
Elizabeth T. CAZES and Joseph M. Cazes
v.
The PARISH OF WEST BATON ROUGE and the Police Jury of West Baton Rouge Parish.
No. 97 CA 2824.
Court of Appeal of Louisiana, First Circuit.
December 30, 1998.
*56 Philip Bohrer, Baton Rouge, Louisiana, for Plaintiffs/Appellees Elizabeth T. Cazes and Joseph M. Cazes.
Ben Louis Day, Baton Rouge, Louisiana, for Defendants/Appellants The Parish of West Baton Rouge, The West Baton Rouge Parish Council, and Commercial Union Insurance Company.
BEFORE: GONZALES, KUHN, and WEIMER, JJ.
KUHN, J.
This appeal, which involves a personal injury suit, addresses whether a Parish and Parish Council as owners of premises used as a polling place are liable for injuries sustained by an election commissioner who was working on the premises on an election day. We affirm the district court's finding of liability and assessment of damages.

I. FACTS AND PROCEDURAL BACKGROUND
On October 21, 1995, plaintiff, Elizabeth T. Cazes, who was scheduled to work as an election commissioner, arrived at the polling place located on Antonio Road in the Parish of West Baton Rouge, Louisiana, at approximately 5:20 a.m.[1] According to Mrs. Cazes' trial testimony, it was still dark upon her arrival at the building and the lighting was poor at the front door entrance because it was illuminated with only one small light. She entered the building using a set of concrete steps located at the front entrance. At approximately 6:00 a.m., Mrs. Cazes returned outside the front entrance of the building to post a "no polling" sign. Mrs. Cazes testified at trial that upon exiting the building, she stepped down with her right foot followed by her left foot on the top step. Then she placed her right foot on the next step, which was the last step on the bottom. She stated she slipped off the bottom step because it was broken at an angle at the corner of the step. When she fell, she broke her fall with her right hand causing a severe fracture to her right wrist.
After the accident, Mrs. Cazes was driven home by another election commissioner and then transported to the hospital by her husband. Initially, her injury was treated conservatively. Mrs. Cazes' treating physician, Dr. Kenneth C. Cranor, an orthopedic surgeon, attempted to realign the comminuted fracture without surgery by using an immobilization apparatus. When this closed-reduction treatment proved unsuccessful, Mrs. Cazes underwent an open-reduction surgery and an external fixation device was applied to her arm.
Following the accident, Mrs. Cazes and her husband, Joseph M. Cazes, filed suit against the Parish of West Baton Rouge ("the Parish") and the West Baton Rouge Parish Council ("the Council"),[2] who were both stipulated to be owners of the polling place. Plaintiffs claimed that the building and stairs were defective and that defendants were strictly liable to plaintiffs under La.C.C. arts. 2317 and 2322. Mrs. Cazes alleged that her fall resulted in "painful and disabling injuries" and Mr. Cazes alleged that he had suffered a loss *57 of consortium as a result of his wife's injuries.
The trial court concluded that Mrs. Cazes established her injury was caused by an unreasonably dangerous condition in the defendants' custody, reasoning that the broken step along with the lack of handrails on the steps presented an unreasonable risk of harm. The court found that since the step was broken by a Parish employee engaged in a bush-hogging activity at least three months prior to the accident, "defendants had ... constructive knowledge of the broken step prior to the accident and failed to take reasonable steps to correct the condition." Because the trial court determined that defendants' liability was premised on strict liability, the court concluded that La.R.S. 18:533 F(1) did not provide defendants with immunity for Mrs. Cazes' injuries which occurred while the premises were being used as a polling place on election day. La.R.S. 18:533 F(2).
The trial court assigned five percent fault to Mrs. Cazes, finding she should have looked down as she stepped and that if she had done so, she may have been able to either avert her step or soften her fall. With respect to damages, the court assessed Mrs. Cazes' general damages to be $100,000.00. The court also assessed Mr. Cazes' loss of consortium damages to be $5,000.00.[3]
Defendants have appealed the trial court's judgment asserting the trial court erred in: 1) failing to find defendants immune from liability based on La.R.S. 18:533 F;[4] 2) finding that plaintiffs sustained their burden of proof regarding defendants' liability; 3) finding defendants to be ninety-five percent at fault and Mrs. Cazes only five percent at fault, 4) in assessing Mrs. Cazes' general damages to be $100,000.00; and 5) assessing $5,000.00 in damages for Mr. Cazes' loss of consortium claim.

II. ANALYSIS

A. Statutory immunity
Louisiana Revised Statutes 18:533 F provides:
Responsibility for acts or omissions. (1) An owner, lessee, or occupant of a premises to be used by any person as a polling place on any election day shall not be liable to such person for injury to person or property which occurs on the premises while it is being used as a polling place on any election day.
(2) This Subsection does not exclude any liability which would otherwise exist for willful or malicious injury to persons or property or liability imposed on the owner, lessee, or occupant of the premises pursuant to Civil Code Articles 2317 and 2322.

(3) Nothing in this Subsection shall be construed to relieve any person using the premises of another as a polling place from any obligation which he may have in the absence of this Subsection to exercise care in his use of such premises, or from the legal consequences of failure to employ such care.
(4) The word "premises" as used in this Subsection includes lands, private ways, buildings, and structures which are being used as a polling place, or used as access to a polling place, on any election day.
(Emphasis added.)
Defendants urge that plaintiffs' claims are barred by the operation of this statute. Based on the plain language of La.R.S. *58 18:533 F, we find that the statute does not provide immunity where liability is based on strict liability under La.C.C. arts. 2317 and/or 2322.[5] Accordingly, we consider whether the trial court erred in finding defendants strictly liable for Mrs. Cazes' injuries.

B. Strict Liability
Defendants urge that plaintiffs have failed to establish that the steps presented an unreasonable risk of harm to Mrs. Cazes and that plaintiffs have failed to prove that the alleged defect was the cause of Mrs. Cazes' injury. Defendants also contend that the accident was caused solely by Mrs. Cazes' negligence in failing to look down while she descended the steps. Defendants point out that while plaintiff testified during trial that she looked down as she went down the steps, in her earlier deposition testimony, she admitted she did not know where she was looking as she walked down the steps. Defendants also emphasize that during the trial, Mrs. Cazes stated she was certain she placed her foot on the broken part of the step but that during her prior deposition testimony, she admitted she did not know on what part of the step she had placed her foot.
During the trial, Mrs. Cazes testified that on the day of the accident, she was wearing flat shoes with rubber soles. She explained that the concrete steps (which were apparently not permanently affixed to the building) were positioned so that, when she exited the building, the right side of the steps was even with the right side of the door. Because of the location of the steps, she testified that there was no place to stand on the steps to the right of the door entrance. She testified that as she descended the steps, her feet were positioned toward the right side of the steps. She stated that she was certain that she placed her right foot upon the right side of the bottom step in the area where the step was broken. Upon doing so, her foot immediately slipped off the step.
Mrs. Cazes stated that she did not notice the broken step upon entering the building. While plaintiff testified at the trial that she was looking down as she descended the steps, in an earlier deposition testimony she had testified that she did not remember where she was looking as she descended the steps. However, she also stated in her deposition testimony that she assumed she was looking down because that is what she usually does as she goes down steps. Regardless of where she was looking, she explained that it was probably too dark for her to have seen the broken step. She also testified during her deposition testimony that she did not know whether she had placed her right foot down on the broken part of the step. However, during the deposition, she also explained that she would not have fallen if she had not placed her foot on the broken part of the step. When questioned during trial about the inconsistencies in her testimony, Mrs. Cazes stated she was confused during her deposition testimony.
After the accident occurred, Mr. Michael J. Frenzel, an expert in the field of safety, examined the steps. He testified that about five and one-half inches across the front and the depth of the concrete on the bottom step was chipped out. He opined that the broken step presented a defective condition which created a slip hazard. He testified that the steps should have been repaired or replaced prior to being used on election day. He also testified that the building should have had a landing at the top of the steps and the steps should have had handrails.
Louisiana Civil Code article 2317 provides, in pertinent part, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things which we have in our custody." At the time of the accident, *59 La.C.C. art. 2322 provided in part, "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it...."[6] Under a strict liability theory, plaintiff has the burden of proving: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. See Oster v. Dep't of Transp. & Dev., State of Louisiana, 582 So.2d 1285, 1288 (La.1991); Morell v. City of Breaux Bridge, 94-1378, p. 3 (La.App. 3 Cir. 5/31/95), 660 So.2d 882, 883, writ denied, 95-2608 (La.1/12/96); 666 So.2d 321. Additionally, La.R.S. 9:2800 requires plaintiffs to prove governmental defendants knew or should have known of the damage-causing defect and had a reasonable amount of time to remedy the defect but did not do so. Rhodes v. State, Dep't of Transp. And Dev., 95-1848, pp. 6-7 (La.5/21/96); 674 So.2d 239, 242-243; Campbell v. Louisiana Dep't of Transp. & Dev., 94-1052, p. 5 (La.1/17/95); 648 So.2d 898, 901.
The defendants stipulated they were the owners of the premises. As such, the parties do not dispute that the steps were in the defendants' custody. We next review the trial court's determination that the premises presented an unreasonable risk of harm. In Reed v. Wal-Mart Stores, Inc., 97-1174, pp. 4-5 (La.3/4/98); 708 So.2d 362, 364-365, the Supreme Court set forth the following pertinent analysis:
Because a determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than-scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or trial court should be afforded deference and we therefore hold that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. A reviewing court may only disturb the lower court's holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous.
In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put: The trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others? The reviewing court must then evaluate the fact finder's determination under the manifest error standard of review.
(Citations omitted.)
The evidence is uncontradicted that on election day, the bottom step at the main entrance of the polling place was broken with part of the concrete step missing. The steps were unquestionably expected to be used by the general public on that day. The Parish and the Council are responsible for providing a reasonably safe place for all voters and election commissioners expected to frequent the premises. Burgess v. City of Shreveport, 471 So.2d 690, 693 (La.1985). The defendants could have repaired the steps or replaced the steps prior to election day or they possibly could have blocked off the entrance and used the side entrance to the building.[7] *60 We find no manifest error in the trial court's conclusion that the missing part of the step (which measured about five and one-half inches across the front and the depth of the step), along with the absence of handrails, presented an unreasonable risk of harm to Mrs. Cazes.
With respect to causation, the trial court set forth the following reasons:
Mrs. Cazes testified that as she exited the doorway onto a set of concrete steps, she placed her right foot where the broken corner of the step was, which caused her to lose her balance and fall. She further testified that she fell on her right hand, and that there was no hand rail [sic] to hold on to [sic] to either delay or prevent the fall.
Dr. Kenneth Cranor testified that Mrs. Cazes' injury, medical treatment, and need for surgery, were caused by her fall at the polling place; that her injury was consistent with the fall.
Based upon these set of facts, this court must conclude that plaintiffs have met their burden of proof in establishing that plaintiff's fall on her right hand was caused by an unreasonably dangerous condition created by the defendants; and, that her resulting injury presented itself a as [sic] result of the accident.
Based on this reasoning, the trial court apparently determined that Mrs. Cazes was a credible witness and that her trial testimony regarding the placement of her feet on the steps accurately described the manner in which the accident happened. The trial court was free to accord greater weight to Mrs. Cazes' trial testimony than her deposition testimony. See Rich v. Tench Elec. Motor Works, Inc., 26,072, pp. 4-5 (La.App.2d Cir.8/19/94); 642 So.2d 293, 296. We find no manifest error in the trial court's determinations regarding causation. See Hardenstein v. Cook Constr., Inc., 96-0829, p. 8 (La.App. 1st Cir.2/14/97); 691 So.2d 177, 183, writ denied, 97-0686 (La.4/25/97); 692 So.2d 1093. Credibility determinations and factual inferences which are reasonably supported by evidence may not be set aside. Stobart v. State, Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
A public entity must have actual or constructive notice in order to be responsible for damage resulting from a defect or vice in a building within its care and custody. La.R.S. 9:2800 A and B. Constructive notice means the existence of facts which infer actual knowledge. La.R.S. 9:2800 C. This definition allows for the inference of actual knowledge to be drawn from facts demonstrating that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public body had exercised reasonable care Hammons v. City of Tallulah, 30,091, pp. 4-5 (La.App.2d Cir.12/10/97); 705 So.2d 276, 280-281, writs denied, 98-0407, 98-0440 (La.3/27/98); 716 So.2d 892, 894.
Mr. Cazes testified that the step in question had been broken for several months prior to his wife's accident. He was aware of the condition of the step because he regularly walked on the road in front of the parish building and had noticed the broken step and a chunk of concrete on the ground. He had also been informed by a Parish employee that the step had been broken by a bush-hog that the Parish used to cut the grass. Mr. Cazes also testified that he had never mentioned the broken step to his wife.[8]
Based on Mr. Cazes' testimony and the fact that the condition of the step had been caused by the defendants' own grass-cutting activities, the trial court found that "the defendants, by the exercise of ordinary *61 care and diligence, must have known of its existence in general and could have guarded the plaintiff from injury." We find no manifest error in the trial judge's conclusion that the defendants had constructive notice of the defect which caused Mrs. Cazes' injuries. La.R.S. 9:2800; Rosell v. ESCO, 549 So.2d 840 (La.1989).
Accordingly, the record supports the trial court's findings that the steps in question were in the defendant's custody, the broken concrete step coupled with the absence of handrails presented an unreasonable risk of harm to Mrs. Cazes, the defective condition of the step caused her injuries, and defendants had constructive notice of the defective condition. Thus, we find no error in the trial court's determination that defendants are strictly liable for Mrs. Cazes' injuries based on La.C.C. arts. 2317 and 2322.

C. Fault Allocation
Louisiana Civil Code article 2323A[9] provides as follows:
In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Clement v. Frey, 95-1119, 95-1163, p. 8 (La.1/16/96); 666 So.2d 607, 611, quoting Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985).
A determination of the allocation of fault by the trier of fact is a factual finding. Guidroz v. State, Through the Dep't of Transp. And Dev., 94-0253, p. 7 (La. App. 1st Cir.12/22/94); 648 So.2d 1361, 1366. Factual findings cannot be overturned in the absence of manifest error. The issue to be resolved by this court is not whether the trial court was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Dep't of Transp. and Dev., 617 So.2d at 882.
The trial court stated that Mrs. Cazes was carrying a sign regarding election laws as she descended the steps. The court found that "[s]he should have been looking down at what she was stepping onto." The court concluded that if she had done so, she may have been able to either avert the broken step or soften her fall. Defendants emphasize the fact that Mrs. Cazes' trial testimony and deposition testimony were not consistent regarding whether she was looking down as she descended the steps. However, the trial court apparently decided this issue in the defendants' favor, determining that Mrs. Cazes did not look down as she descended the steps.
*62 The accident occurred early in the morning, technically before sunrise according to Mr. Frenzel's testimony. Mrs. Cazes also testified the lighting on the steps was poor and that she did not think the lighting was adequate for her to see the broken step. Defendants' conduct in failing to repair the step after it was damaged created a significant risk that someone using the steps would be injured. While Mrs. Cazes' injury may have been caused in part by her inadvertent behavior of failing to look down as she walked down the steps, defendants were clearly in a superior capacity to avoid the danger created by the steps. Even considering that the trial court determined Mrs. Cazes was not looking down as she placed her foot on the broken step, we cannot say the trial court's allocation of five percent fault to Mrs. Cazes is manifestly erroneous.

D. Damages
Much discretion is left to the judge or jury in the assessment of general damages. La.C.C. art. 2324.1. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La.C.C. art.1999. In reviewing an award of general damages, the court of appeal must determine whether the trier of fact has abused its discretion in making the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La. 1993), cert. denied sub nom. Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

1. Mrs. Cazes' General Damages
Defendants complain that the trial court erred in assessing $100,000.00 in general damages, urging that a more appropriate award for Mrs. Cazes' injury would be in the range of $40,000.00. While defendants recognize that Mrs. Cazes underwent surgery to have her fractured wrist reset, that she has lost some of the strength in her right hand, and that her injury requires her to avoid lifting anything weighing over five pounds, defendants also assert that the record establishes that Mrs. Cazes' condition has been improving and she has been able to return to driving, an activity which she had not been able to perform for several months after her surgery.
After Mrs. Cazes' fall, her right hand became very swollen and painful and her husband brought her to the emergency room for treatment. Dr. Cranor initially tried to repair her fractured wrist, which he described as "grossly deformed," by performing a closed reduction. Dr. Cranor explained the procedure used to pull the broken bones back into alignment. This method of treatment involved the use of an immobilization apparatus made out of plaster. Mrs. Cazes testified that for the next three weeks, she remained in pain although she was taking pain medications. She was not able to use her immobilized right hand. Mr. Cazes had to assist her with all aspects of her daily routine.
When the results were not satisfactory after this three-week period, Dr. Cranor performed a surgical procedure to reset the wrist which required that Mrs. Cazes be placed under general anesthesia. The surgery involved an incision to access the bone fragments, the replacement of the fragments in the best possible position, and the placement of pins into the wrist and forearm with the use of a clamp to hold the pins in place. A fixator device, a system of pins and clamps which clamp to the internal pins, was also applied externally to the wrist, with the bases of the pins penetrating the skin. As such, the use of the fixator device resulted in open wounds which required daily dressing changes with hydrogen peroxide and ointment. For the next several weeks, Mrs. Cazes was required to return to Dr. Cranor on a weekly basis so that the operative site could be checked for infection.
Mrs. Cazes found the fixator to be very painful and she explained it limited her activities greatly, especially since she is right-handed. Following the removal of the fixator after six weeks, Mrs. Cazes' *63 hand was restricted with a splint for another six weeks. After the splint was removed, she explained she had so little strength in her right hand that she could not even pick up a piece of bread. Mrs. Cazes stated that as of the time of trial, approximately one and one-half years after the accident, she had not regained much of the strength in her thumb and forefinger and she finds it difficult to do any task requiring the application of pressure. She also testified that due to the loss of dexterity in her wrist and the loss of control and strength in her fingers, she is no longer able to do the same type of fine hand-work sewing that she was able to do before the accident. She also finds it very difficult to garden since her injury. Because she is not able to lift heavy items, and particularly dangerous items such as hot water or hot grease, she requires assistance from her husband while cooking. She also stated that she still cannot completely dress herself due to the limitations of her wrist. Although she testified she does drive on occasion, she explained that she does not drive much because she cannot turn the ignition key with her right hand. Mrs. Cazes stated that she still endures pain on a daily basis, caused by activities as simple as pouring a cup of coffee. Nevertheless, she acknowledged that her physical condition has improved since her surgery although she described her progress as being slow.
Dr. Cranor described Mrs. Cazes' injury as a comminuted displaced Colles fracture. He classified the injury as "severe." Although he considered her treatment successful, he stated she was "a long way from normal." He explained his goal was never to reestablish a normal wrist but rather to reestablish a "functional wrist." He testified Mrs. Cazes should not lift anything weighing over about five pounds. He also stated that Mrs. Cazes will continue to have difficulty with gripping due to decreased grip strength in her right hand. Due to her injury, Mrs. Cazes will also have an increased risk of arthritic changes in her wrist. While Dr. Cranor explained that Mrs. Cazes' ability to move her hand and fingers will improve, he stated her ability to perform fine motion functions that affect the wrist and the fingers will worsen over time.
Mrs. Cazes had her wrist immobilized for a total of at least fifteen weeks. During that time she was dependant upon others (mainly Mr. Cazes) for even her most basic needs. Even though she has adapted to her situation, she continues to have restrictions on the functions she performs. Based on the severity of Mrs. Cazes' injury, we find the trial court did not abuse its discretion in assessing general damages in the amount of $100,000.00. Mrs. Cazes, who was sixty-seven years old at the time of the accident, had not experienced any problems with her wrist prior to the accident. Due to the injury and the resulting surgery, Mrs. Cazes was unable to use her hand at all for several weeks. The surgery was followed by extensive post-operative care. According to Mrs. Cazes' testimony, she has suffered a considerable amount of pain and inconvenience and her activities have been greatly limited as a result of her injury. According to Dr. Cranor, although Mrs. Cazes has reached maximum medical improvement, Mrs. Cazes' wrist will never again be "normal."
It is well settled that the trier of fact has much discretion in awarding damages. La.C.C. art. 2324.1. The standard for appellate review of general damages is set forth in Youn v. Maritime Overseas Corp., 623 So.2d at 1261, wherein the Louisiana Supreme Court stated that the discretion of the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d at 1260. It is only when the *64 award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Youn v. Maritime Overseas Corp., 623 So.2d at 1261. We find the record fully supports the trial court's assessment of general damages for Mrs. Cazes' injury.

2. Loss of Consortium
Defendants argue that the trial court's assessment of $5,000.00 for Mr. Cazes' loss of consortium is excessive, asserting that $2,500.00 is a more appropriate assessment of his damages.
An award for loss of consortium is properly made where there has been some measurable or compensable loss, such as loss of love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, and felicity. Haley v. McManus, 593 So.2d 1339, 1344 (La.App. 1st Cir.1991), citing Armstrong v. Fireman's Fund Insurance Co., 558 So.2d 646, 652 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990).
Mr. Cazes testified that during the three-week span between the accident and the surgery and also during the first six weeks following the surgery, his wife required his assistance with practically all of her daily activities, including getting dressed and going to the bathroom. After the external fixator device was removed, Mrs. Cazes was able to attempt more activities on her own. However, Mr. Cazes stated that initially, she was not even able to hold a fork.
Since the accident, Mrs. Cazes does not cook as much as she did before the accident. Mr. Cazes testified that since the accident he has assisted his wife (to a greater extent than before the accident) with the heavy housecleaning, heavy cooking and grocery shopping. He also helps her with the laundry.
Mrs. Cazes' injury has limited her activities for a significant period of time. The record establishes that Mrs. Cazes has been unable to provide the same level of support and services to her husband as she did prior to the accident. Accordingly, we find no abuse of discretion in the trial court's assessment of damages for loss of consortium.

III. CONCLUSION
For the above reasons, we affirm the trial court's judgment. Since the trial court's judgment improperly casts the Police Jury of West Baton Rouge Parish rather than the West Baton Rouge Parish Council, we amend the judgment to properly cast the West Baton Rouge Parish Council. Appeal costs in the amount of $734.20 are assessed equally against defendants-appellants, the Parish of West Baton Rouge and the West Baton Rouge Parish Council.
AMENDED AND, AS AMENDED, AFFIRMED.
GONZALES, J., dissents with regard to the amount of damages, in all other respects agrees.
NOTES
[1] Although Mrs. Cazes was working at the polling place, defendants acknowledged during trial that plaintiff was not an employee of the defendants. The record establishes that Mrs. Cazes was paid for her services as an election commissioner by Mr. Jerry Fowler, the Commissioner of Elections.
[2] While plaintiffs named the Police Jury of West Baton Rouge as a defendant, the West Baton Rouge Parish Council answered indicating that they had been erroneously sued as the Police Jury of West Baton Rouge.
[3] The parties stipulated that Mrs. Cazes' medical expenses were $15,693.18. The judgment, which reflects a five percent reduction attributable to Mrs. Cazes' fault, awarded a total sum of $114,658.52 in favor of Mr. and Mrs. Cazes.
[4] Appellants also assign as error the trial court's denial of their motion for summary judgment based on the operation of La.R.S. 18:533 F. Since we are reviewing this matter after a trial on the merits, we do not consider whether the trial court erred in denying the motion for summary judgment.
[5] Plaintiffs argued alternatively that La.R.S. 18:533 F, if applied to provide immunity to a governmental agency, was unconstitutional. We do not reach this argument.
[6] By Acts 1996, 1st Ex.Sess., No. 1, § 1, effective April 16, 1996, La.C.C. art. 2322 was amended to provide that an owner is answerable for damages only upon a showing that he knew or should have known of the damage-causing vice or defect. By the same legislation, La.C.C. art. 2317.1 was enacted to provide that the owner is liable only upon a showing that he knew or should have known of the damage-causing ruin, vice, or defect.
[7] Mrs. Cazes' testimony established that there was an entrance on the left side of the building.
[8] We note the trial court found that because there was no evidence establishing Mr. Cazes was aware that Mrs. Cazes was going to work at the polling place on the day of the accident, the evidence did not support a finding that Mr. Cazes had a duty to warn Mrs. Cazes about the defective condition of the steps. Thus, the court concluded that knowledge of the defective condition of the steps could not be imputed to Mrs. Cazes.
[9] We note that La.C.C. art. 2323 was amended by Acts 1996, 1st Ex.Sess., No. 3, § 1, with an effective date of April 16, 1996. In Keith v. United States Fidelity & Guar. Co., 96-2075, p. 7 (La.5/9/97); 694 So.2d 180, 183, the supreme court determined that the amendment to La.C.C. art. 2323 is procedural and can be applied retroactively.