LKUHN, J.
Defendants-appellants, Bobby Gideon, his employer Craig Webre in his official capacity as the Sheriff of the Parish of Lafourche, the Lafourche Parish Sheriffs Office, and their insurer, Coregis Insurance Company, appeal a judgment award *440 ing damages to plaintiffs, Charlene and Wayne Martin and their insurer, Prudential Insurance Company (Prudential), as a result of injuries and damages sustained in an automobile accident. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
On October 9, 1998, an automobile driven by Charlene Martin was struck by a vehicle owned by the Lafourche Parish Sheriffs Office and driven by Gideon, a lieutenant with the Uniform Patrol Division of the sheriffs office, while he was working in his official capacity. Lieutenant Gideon failed to yield the Lafourche Parish Sheriffs Office vehicle he was driving as it entered onto the roadway from a shoulder of La. Highway 1, and he struck Mrs. Martin’s vehicle.
Mrs. Martin and her husband, Wayne, filed a petition for damages, naming the lieutenant, his employer, and their insurer as defendants, demanding a trial before a jury, and averring defendants were liable to plaintiffs for damages. Prudential, the Martins’ insurer, also filed a lawsuit naming the same defendants and seeking reimbursement as a result of its subrogation rights for property damage and medical payments made to Mrs. Martin. The two lawsuits were consolidated.
On the day of trial, the Martins advised the trial judge that the amount in dispute was less than the requisite $50,000 necessary for a jury, and the trial judge dispensed the jury proceeding, allowing the matter to proceed as a bench trial.
|,sAfter the receipt of testimonial and documentary evidence, the trial court rendered a judgment awarding Mrs. Martin, among other things, general damages in the amount of $26,000 and Mr. Martin loss of consortium damages in the amount of $8,000. Special damages were awarded to Prudential for its subrogation claims.
This appeal followed. In this appeal, it is undisputed that the sole and proximate cause of the accident was Gideon’s negligence. Appellants contend that the trial court erred in dismissing the jury and seek a remand to allow a jury to hear the evidence and render a verdict. In the alternative, appellants challenge the awards of.$26,000 in general damages to Mrs. Martin and $3,000 in loss of consortium damages to Mr. Martin.
PROPRIETY OF THE DISMISSAL OF DEMAND FOR A JURY TRIAL
A jury trial is not available in a suit where the amount of no individual petitioner’s cause of action exceeds fifty thousand dollars, exclusive of interests and costs. La. C.C.P. art. 1732(1). And procedural maneuvers designed solely to deprive litigants of their right to a jury trial based on jurisdictional amounts are disfavored. Guidry v. Millers Cas. Ins. Co., 2001-0001, p. 7 (La.App. 1st Cir.6/21/02), 822 So.2d 675, 682.
In order to be entitled to a jury trial, a party must timely file a pleading demanding a jury trial, see La. C.C.P. art. 1733, and include a general allegation that the petitioner’s cause of action exceeds $50,000.00, exclusive of interest and costs. See La. C.C.P. arts. 893, 1732. See Fontenot v. Allstate Ins. Co., 02-899 (La.App. 5th Cir.11/20/02), 848 So.2d 602, 2002 WL 31600013. Louisiana 14Code of Civil Procedure article 893 prohibits the inclusion of a specific dollar amount of damages in the petition but provides, “if the specific amount of damages is necessary to establish ... the right to a jury trial ... a general allegation that the claim exceeds ... the requisite amount is sufficient.” Because the right to a jury trial does not come into existence unless a petitioner’s cause of action exceeds the requisite juris *441 dictional amount, either plaintiff or defendant may allege that the claim exceeds the requisite amount, thereby establishing the right or the absence of the right to a jury trial. See May v. Winn Dixie Louisiana, Inc., 613 So.2d 1026, 1028 (La.App. 3d Cir.), writ denied, 616 So.2d 704 (La.1993). If the jurisdictional amount is not clear from the plaintiffs petition, the defendant has the right to propound interrogatories requiring the plaintiff to specify the amount sought as damages. Id. See also Fontenot v. Allstate Ins. Co., 02-899 (La.App. 5th Cir.11/20/02), 848 So.2d 602, 2002 WL 31600013 (noting that in light of the time constraints of La. C.C.P. art. 1733, a defendant does not have time to propound interrogatories, receive interrogatory answers, and then timely request a jury trial, leaving him in a problematic position since an allegation of the amount in controversy made for jury trial purposes should be neither binding nor admissible in evidence against a party at the trial on the merits, indicating that the current status of the law is unclear and poses problems for practitioners.)
In this case, neither the Martins nor the appellants made a general allegation that the Martins’ claims exceeded $50,000 in their respective pleadings. In the concluding paragraph of their petition, the Martins “pray ... for a trial by jury.” |K And in answering the petition, appellants “further pray for a trial by jury as to all issues.” Although appellants propounded an interrogatory upon the Martins requesting a statement of and itemization of the amount of damages, only the amount of the property damage ($3,327.37) and total medical expenses (approximately $2,093.28) were provided. The Martins specifically stated, “The remaining damages sought have not yet been determined.” It was not until the stipulation at the commencement of trial that any further statement of total damages was given to appellants.
Appellants urge the last-minute stipulation that total damages were less than $50,000 was a procedural maneuver designed solely to deprive litigants of their right to a jury trial. Appellants also contend that a proffered letter shows the Martins failed to advise them that the claim was valued at less than $50,000 and is indicative that the stipulation was a procedural maneuver designed to circumvent appellants’ right to a trial before a jury.
The proffered letter is allegedly a request by the Martins to settle their claims for an amount in excess of $50,000. But neither the pre-trial actions of the Martins or appellants, nor the evidence introduced, supports in any reasonable view the proposition that the value of any claim in this suit was in excess of $50,000. Moreover, the letter is evidence of an offer by the Martins to furnish a release from the lawsuit (something of value) in an attempt to compromise the validity or ^amount of a disputed claim and, as such, is inadmissible to prove the amount of the claim under La. C.E. art. 408 A.[1]
The appellants have not averred, and the record does not suggest, that they were denied access to any of Mrs. Martin’s *442 medical records or otherwise prevented from reasonably evaluating the value of the claims independent of the valuation of the claims by the Martins. This record shows that appellants, who have demanded the jury trial but have never pleaded a general allegation that the amount of the Martins’ damages was in excess of $50,000, were given a reasonable opportunity to seek and obtain information concerning the amount of damages through interrogatories and other discovery. See Fontenot v. Allstate Ins. Co., 02-899 (La.App. 5th Cir.11/20/02), 848 So.2d 602, 2002 WL 31600013. And throughout this litigation, appellants have consistently maintained that Mrs. Martin’s damages as a result of the October 9, 1998 accident were minimal to none. In a pre-trial memorandum affixed to their pre-trial order, appellants specifically pointed out that Mrs. Martin had been involved in an earlier vehicular accident and sustained injury to the same portions of her body. Although the last-minute timing of the stipulation may be viewed as creating a questionable appearance about the Martins’ motivation, |7we find no error in the trial court’s decision to strike the jury. Cf. Tenpenny v. Ringuet, 95-1036 (La.App. 3d Cir.3/6/96), 670 So.2d 644.
DAMAGES
Appellants challenge the award of $26,000 to Mrs. Martin for general damages, maintaining that the evidence fails to establish that the October 9, 1998 accident was the cause of Mrs. Martin’s injuries.
Claire Hargis, an expert in physical therapy, testified as a treating practitioner and, by consent of appellants, from the physical therapy clinic records on behalf of Gary Dragon, a physical therapist who also treated Mrs. Martin. According to Har-gis, she treated Mrs. Martin in March 1999 on a prescription from Dr. Kyle Dickson. Hargis stated that the clinic she owned and at which she works has records indicating that Mrs. Martin had received treatment in 1997, before Hargis administered physical therapy. And in May 2000, five and one-half months after the accident with Gideon, Mrs. Martin received another prescription from another physician and was treated by physical therapist Dragon. Hargis described Mrs. Martin’s condition as classic cervical and lumbar injuries, indicating that the clinic’s records showed Mrs. Martin had neck and back problems throughout her treatment at the facility.
Hargis explained the physical therapy techniques applied to Mrs. Martin, first in March 1999 by her, and later by Dragon in May 2000. She said that when discharged, Mrs. Martin had not improved in that she had no long lasting functional restoration, but that Mrs. Martin had received temporary relief. Hargis testified |sthat Mrs. Martin returned to the physical therapy clinic in May 2000, having experienced constant pain in her shoulder after sweeping cobwebs off the ceiling in late April 2000. Dragon treated Mrs. Martin fourteen times over two months. Dragon noted that in July 2000, Mrs. Martin indicated seventy percent improvement, specifically stating she was able to sleep without symptoms and was increasing her activity level.
In Hargis’s opinion, to a fifty-one percent reasonable certainty, the pain and other symptoms that Mrs. Martin was experiencing when Dragon treated her were aggravated as a result of the October 9, 1998 accident. According to Hargis, based on Mrs. Martin having reported continuing symptoms commencing from the October 1998 car accident through the time she presented for treatment in May 2000, the symptoms continued to persist as a result of the accident, which flared up with the cobweb sweeping incident. Thus, to a rea *443 sonable medical certainty, she related Mrs. Martin’s condition to the October 1998 car accident. Hargis explained that she assumed Mrs. Martin had a baseline pain level, which was exacerbated by the later cobweb-sweeping incident.
Mindful that the record contains no contrary medical evidence, we find this testimony provides evidentiary support for the trial court’s conclusion that the October 9, 1998 car accident aggravated Mrs. Martin’s pre-existing cervical and lumbar injuries, and as such, the finding is not manifestly erroneous. See Richard v. Milazzo, 01-2283, p. 4 (La.App. 1st Cir.11/8/02), 831 So.2d 1055, 1059. Thus, we are required by our standard of review to affirm that factual finding and the ^conclusion that the October 9, 1998 accident caused an exacerbation of Mrs. Martin’s cervical and lumbar injuries. See Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993).
Appellants assert the amount of $26,000 awarded to Mrs. Martin in general damages was erroneous because Mrs. Martin had already been severely limited in the level of her participation in physical activities as a result of a prior car accident. Thus, they contend, the aggravation was not invasive enough to her lifestyle to warrant $26,000 in general damages.
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. The standard for appellate review of general damage awards is difficult to express and is necessarily nonspecific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. The discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993).
m Mrs. Martin sought medical attention at St. Anne Hospital several hours after the accident, complaining of pain in her shoulder, neck, back and pelvis. She was given a prescription and advised that her x-ray examination was normal. She subsequently sought medical attention for continuing pain from a physician, and in May 2000 was prescribed physical therapy subsequent to unsuccessful counseling at a pain management clinic.
Mrs. Martin candidly acknowledged that she had been involved in another car accident in 1993, which affected her neck, right shoulder, lower back, pelvic area, and suffered a facial injury as well. According to Mrs. Martin, immediately preceding the October 9, 1998 accident, her symptoms were not as severe. But after Gideon’s car struck hers, Mrs. Martin testified that the pain she felt was worse. She stated that the October 9, 1998 accident aggravated her injury.
Mrs. Martin recalled the pain she experienced as a severe tightness in her neck and right shoulder. In describing the right shoulder pain she said, “I always felt like I had a baseball sitting where my shoulder blade is going to my lungs. So I could never take a deep breath because my sternum felt like it was going to crack.” She also experienced tremendous pelvic *444 pain, explaining that she had difficulty sitting due to pressure. She attributed the initial pain to the 1993 accident but felt the onset of more pain as a result of the 1998 accident. Testifying the more intensified pain that she felt as a result of the 1998 accident lasted between 20 and 24 months, Mrs. Martin explained that she'found relief as a result of the physical therapy treatment she received from Gary Dragon in May 2000 through July 2000.
In During cross-examination, Mrs. Martin admitted that she had been severely restricted in the activities she could participate in as a result of the 1993 accident. But she said that the level of pain became higher as a result of the 1998 accident.-
Based on the testimonial and documentary evidence, we cannot say the trial court abused its much discretion. The trial judge, who saw the witnesses’ demeanor and heard their intonations, clearly fashioned an award for Mrs. Martin’s particular injuries, aware of their effects on her under these particular circumstances. Although appellants suggest that in its written reasons, the trial court erroneously attributed Mrs. Martin’s inability to hunt, fish, and endure a boat ride to the Martins’ camp to the October 9, 1998 accident, a careful reading does not support this assertion. The trial court only noted that Mrs. Martin had “previously” been able to engage in those activities, without referring to a date. Since Mrs. Martin testified that the 1998 accident exacerbated the cervical and lumbar injuries she sustained in the 1993 accident, the trial court could reasonably consider the emotional and physical impact on Mrs. Martin from the increased in pain attributable to the 1998 accident. While a reviewing court may well believe the award is generous, we simply cannot say it is an abuse of the trial court’s much discretion.
Maintaining that Mr. Martin testified his wife lived an active lifestyle before the 1998 accident, which they assert was contradicted by Mrs. ‘Martin, appellants contend that in order to justify the award, the trial court had to believe Mr. Martin’s testimony and disbelieve Mrs. Martin’s testimony. They also urge the award of $3,000 to Mr. Martin for his consortium losses was an abuse of discretion.
19, An award for loss of consortium is properly made where there has been some measurable or compensable loss, such as loss of love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid, and assistance, and felicity. Cozes v. Parish of West Baton Rouge, 97-2824, p. 16 (La.App. 1st Cir.12/30/98), 744 So.2d 54, 64.
Our review of the record shows that Mr. Martin did, in fact, acknowledge that his wife’s active lifestyle was initially diminished as a result of the 1993 accident. In describing his wife’s condition on the date of trial, Mr. Martin said that she was in “a maintenance zone,” which was where she was before the 1998 accident. He explained that his reference to a “maintenance zone” meant that Mrs. Martin’s level of comfort was stabilized to a point where they were starting to get back to the lifestyle they shared before the accident. Mr. Martin testified that it took about five years for his wife to get to that “maintenance zone” after the first accident, and two years after the second one.
Mr. Martin stated that he has had to do daily chores around the house that Mrs. Martin had tended to before the initial accident and that this continued after the 1998 accident. He also was required to do more physical labor for the couple’s billboard business, which was something Mrs. Martin had assisted him with before the initial accident. He said that Mrs. Mar *445 tin’s pain was so intense, he was unable even to touch her to massage her back or neck. Describing their typical evenings, Mr. Martin indicated Mrs. Martin was asleep by 7 or 8 P.M., leaving him awake watching the television alone. Mr. Martin testified that as result of Mrs. Martin’s intense pain after the 1998 accident, he had to invest more time with Mrs. Martin’s | ischildren (from a prior marriage) because his wife was unable to attend cheerleading camps or sit on bleachers during basketball game cheerleading activities in which her daughter participated. He was also having to participate in her son’s football activities because of Mrs. Martin’s inability to sit on the bleachers for the duration of a game.
Based on his wife having reached the “maintenance zone” just prior to the 1998 accident, as described by Mr. Martin and in the particulars corroborated by Mrs. Martin, the trial court could have reasonably inferred that because of the aggravation of her cervical/lumbar condition by the second accident, increased participation by Mrs. Martin in their marriage and family, as well as in physical activities, was precluded. Based on the continued need for Mr. Martin to attend to household and work-related chores, refrain from touching his wife, spend evening hours alone watching television, and invest more time participating in the children’s activities on his wife’s behalf, on appellate review, we are constrained to find no abuse of the trial court’s much discretion in awarding $8,000 for loss of consortium.
DECREE
For all these reasons, the trial court’s judgment awarding $26,000 in general damages to Mrs. Charlene Martin and $3,000 in loss of consortium damages to Mr. Wayne Martin is affirmed. Costs of this appeal are assessed to defendants-appellants, Lieutenant Bobby Gideon, his employer Craig Webre in his official capacity as, the Sheriff of the Parish of La-fourche, the Lafourche Parish Sheriffs Office, and their insurer, Coregis Insurance Company.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.

. Louisiana Code of Evidence article 408 A provides:
In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This Article does not require the exclusion of any evidence otherwise admissible merely because it is presented in the course of compromise negotiations....